THE PEOPLE OF THE STATE OF NEW YORK, Respondent, *v.* EDWARD
Thompson, Otherwise Called EDWARD REYNOLDS, Appellant.

*Crime — ex-convict having a "jimmy" in his possession — circumstances evincing
an intent to employ it in the commission of a crime.*

An ex-convict, who, on the day of his discharge from the penitentiary, in which
he had served a term of imprisonment for burglary in the third degree, is
observed by a policeman looking at houses, and, after watching the policeman,
gets into a truck, in which, when overtaken by the policeman, he attempts to
conceal a "jimmy" under a blanket, and, when detected in so doing, attempts
to escape from the officer, may properly be found guilty by the jury of the
crime of having had in his possession a tool commonly used for the com-
mission of burglary "under circumstances evincing an intent to use or
employ" it "in the commission of a crime."

APPEAL by the defendant, Edward Thompson, otherwise called
Edward Reynolds, from a judgment of the Court of General Sessions
of the Peace in and for the city and county of New York in favor
of the plaintiff, rendered on the 21st day of January, 1898, upon the
verdict of a jury convicting him of the felony of having in his pos-
session, under circumstances evincing an intent to use the same in
the commission of a crime, an implement of the kind commonly
used for the commission of the crime of burglary, and also from an
order denying a motion for a new trial.

*Ambrose H. Purdy,* for the appellant.

*Asa Bird Gardiner,* for the respondent.

O'BRIEN, J. :

It appeared that the defendant had been previously indicted and
convicted, upon his plea of guilty, of burglary in the third degree
and sentenced to one year in the penitentiary, from which he had
been released December 30, 1897.

The police officer who made the arrest testified that on Decem-
ber 30, 1897, at about two o'clock in the afternoon, he saw the
defendant, in company with another man, on the east side of
Amsterdam avenue, in the middle of the block, between Seventy-
third and Seventy-fourth streets, "looking at the houses." The

FIRST DEPARTMENT, AUGUST TERM, 1898. -[Vol. 33.

two men went to the southeast corner of Seventy-fourth street and stopped about half a minute. The defendant's companion observed the policeman and the pair moved on. The policeman quickened his steps and got within three feet of them, and heard the other man say to the defendant, "It must be on the next block above." The defendant had a card in his hand. They walked on north as far as a tailor shop between Seventy-fourth and Seventy-fifth streets. As the officer passed, the defendant was pointing out a pattern of cloth in the window. When the officer had got to the middle of the next block, between Seventy-fifth and Seventy-sixth streets, he looked back and both men were watching him. He walked on a little farther, and, looking back, saw them crossing to the north side of Seventy-fifth street and walk west towards the Boulevard; the policeman followed them to the Boulevard, and saw them on a truck going down the Boulevard. He got into a grocery wagon and ordered the boy to overtake the truck. The wagon came up with the truck at Seventy-third street, near Columbus avenue, and when within twenty-five feet of them the defendant recognized the officer and spoke to his companion, who was standing in the center of the truck. The officer mounted the tail end of the truck. The defendant ran toward the driver's seat, on which were a pair of blankets, and endeavored to thrust a piece of iron with sharp-pointed prongs under the blankets. The policeman grabbed him with his left hand and pulled him back, and put his other hand over to where the instrument was concealed, but the defendant grabbed it and tried to throw it under the seat. The officer grasped his arm and drew him back, and the instrument fell out of his hand and into the driver's lap. The driver handed the tool to the officer, and he placed the defendant and the other man under arrest. The defendant jerked away from the officer and ran toward the front of a cable car, but was retaken. The other man escaped.

Two witnesses for the People testified that the iron instrument referred to, commonly called a "jimmy," is of the kind used by burglars in forcing doors leading into dwellings.

The defendant took the stand in his own behalf, giving the name of Maurice Loeha, which he said was his right name, but that he had changed it to Edward Thompson when he was arrested before, and that in the station house, when arrested upon the present charge,

he had assumed the name of Edward Reynolds. His story was that he was a painter by trade, had been up town looking for work, and had got on this truck on his way home ; that he never saw the iron tool until the officer made an effort to grab it from under the blankets on the seat; that he did not know he was a policeman, but thought he was a drunken man who was going to assault him with the instrument, and so he tried to make his escape ; that the officer demanded possession of the instrument from the truck ·driver, but that the driver told him it was his, or belonged to his firm, or was only a sample, and did not give it up until the policeman threatened to place him also under arrest. He denied that the tool belonged to him or that he had any intention of committing a burglary with it, or that he ever saw it until on the truck the officer made a move to take it.

The jury brought in a verdict of guilty. The defendant claims that the evidence was insufficient; that the court erred in certain rulings excluding evidence, and that, assuming the charge as proved, that the defendant, an ex-convict, was arrested with burglars' tools in his possession, the circumstances did not evince a present intention, as the statute requires, of committing a crime.

The first question is presented by a motion made at the close of the People's case, and renewed at the close of the entire case, that the court advise the jury to acquit the defendant on the ground that the evidence was insufficient to warrant a conviction. To dispose intelligently of this, as of the other questions involved, a reference to the section of the Penal Code upon the subject is necessary. It is provided, among other things, in section 508 of the Penal Code, that " a person who makes or mends, or causes to be made or mended, or has in his possession in the day or nighttime, any engine, machine, tool, false key, picklock, bit, nippers or implements adapted, designed or commonly used for the commission of burglary, larceny or other crime, under circumstances evincing an intent to use or employ, or allow the same to be used or employed, in the commission of a crime, or knowing that the same are intended to be so used, shall be guilty of a misdemeanor, and, if he has been previously convicted of any crime, he is guilty of a felony."

It is not disputed but that the question whether the prisoner had or had not in his possession a " jimmy," concededly a tool or implement commonly used for the commission of burglary, was, upon the.

evidence, properly submitted to the jury; but it is contended that the evidence did not tend to show that it was in his possession "under circumstances evincing an intent to use or employ" it "in the commission of a crime." The fair inference from the fact found that he had the instrument in his possession is that he had it just before he mounted the truck and while, with his companion, he was engaged in walking up Amsterdam avenue, looking at the houses. What assistance could be afforded him by such an instrument in his walk is not made to appear, and the circumstances detailed of his excursion left his intent in so carrying a "jimmy" a question for the jury. His explanation that he was a painter by trade did not at all help him, because it is self evident that a jimmy would be of no assistance in painting. This, we think, was clearly a question of fact which has been found against the defendant by the jury, and with their verdict we find no legal ground to interfere.

With regard to rulings upon evidence, we do not think that any error was committed. The question asked by the defendant's counsel of the prisoner, whether or not, the next day in the police court, the officer did not make a charge against his companion, if answered, might have been harmless; but certainly it was not error to exclude it, because it was entirely immaterial. So, also, with respect to the ruling which excluded a question directed to showing the defendant's efforts to reform.

Starting, therefore, with the fact that it was conceded that the defendant had been previously convicted of burglary in the third degree, and the jury having found that he was in possession of a jimmy with intent to commit a crime, upon evidence which justified the court in submitting those questions to the jury, which was done in a full and fair charge, to which no exception was taken, we think that the judgment of conviction entered thereon should be affirmed.

VAN BRUNT, P. J., RUMSEY and MCLAUGHLIN, JJ., concurred.

Judgment affirmed.