(No. 32125.—

THE PEOPLE OF THE STATE OF ILLINOIS, Defendant in Error, *vs.* HAROLD TAYLOR, Plaintiff in Error.

*Opinion filed November 27, 1951.*

470

JOHN B. HARRIS, of Granite City, for plaintiff in error.

IVAN A. ELLIOTT, Attorney General, of Springfield, and AUSTIN LEWIS, State's Attorney, of Edwardsville, (PAUL H. REIS, of Alton, and HARRY L. PATE, of Tuscola, of counsel,) for the People.

Mr. CHIEF JUSTICE DAILY delivered the opinion of the court:

An indictment was returned in the circuit court of Madison County at the March term, 1951, against the plaintiff in error, Harold Taylor, charging him with having

unlawful and felonious possession of burglar tools, in violation of section 39 of division I of the Criminal Code. (Ill. Rev. Stat. 1949, chap. 38, par. 87.) He entered a plea of not guilty and after trial before the court, jury being waived, he was sentenced to the penitentiary for a minimum term of one year and a maximum term of one year and one day. He now prosecutes this writ of error to review the judgment of conviction.

The evidence shows that between September 20 and December 21, 1950, a series of ten burglaries and one attempted burglary were committed within a radius of a few blocks of Eleventh and Langdon streets, in the city of Alton. The area is a residential district inhabited by persons with above-average income. All of the burglaries were committed between the hours of 7:00 P.M. and 11:00 P.M. Early in the evening of January 27, 1951, city police officers Barkley and Vanfossen, while patrolling the area in a police car, observed plaintiff in error walking west on Eleventh Street toward Langdon Street. After circling several blocks, they returned to the intersection and again observed plaintiff in error walking slowly to the north on Langdon Street and looking from side to side. When they stopped him for questioning, plaintiff in error made no attempt to flee but gave his name and stated that he was just taking a walk and looking around. The officers searched plaintiff in error, who was wearing a top coat, and found a pair of pliers in the right-hand pocket of his suit coat, a screwdriver in the left-hand pocket and a pencil type flashlight in his left shirt pocket. The glass lens of the flashlight was covered with black tape leaving only a pin hole for the beam of light to pass through and when lighted it threw a pin-point beam about a quarter of an inch wide. The end of both handles of the pliers had been ground down to form a flat, sharp edge, so they could be used as a screw driver or as a pry. The screw driver was no different than any other of its type, being

about six and one-half inches long with a turning surface of approximately a quarter inch. Both officers testified that the tools found in plaintiff in error's possession were such as were commonly used by burglars. When asked about various burglaries, plaintiff in error denied any guilt.

Plaintiff in error testified that he was in ill health, had not been regularly employed since 1948, and that he supported himself by doing odd jobs. He stated that around five o'clock on the evening of his arrest he had taken the tools to a restaurant operated by Alberto Payne to repair a stove, but found on his arrival that a fire had been lit in the stove making him too late to do the repair work that day. When importuned by the restaurant owner's wife not to leave his tools at the restaurant, for fear they would be lost or stolen, he left with the tools in his pocket. After making several stops in the vicinity of the restaurant, he related that he mailed a letter at the post office, then started for his home taking the shortest and most direct route which took him to the vicinity of Eleventh and Langdon streets, where he was arrested. He admitted that he had been convicted of burglary and larceny in 1933, and was confined in the penitentiary for that crime for a period of ten years, being discharged in 1943. He denied that he had committed any crimes since his discharge.

The wife of the restaurant owner corroborated the testimony that plaintiff in error had come to the restaurant about 5:15 P.M. to fix their stove, and stated that he had worked on the stove once before. Ethel Webster, a cousin of plaintiff in error, and her husband, Henry Webster, testified that the accused made his living by doing odd jobs and that he often used tools and a workbench in their home for that purpose. They also testified that he usually took his meals with their family, paying when he could. Mrs. Webster stated that he left their home between 4:00 P.M. and 4:30 P.M. the afternoon of January 27, after telling her that he was going to fix a stove, and that he

told her, and she expected, that he would be back for supper.

Section 39 of division I of the Criminal Code (Ill. Rev. Stat. 1949, chap. 38, par. 87,) upon which the charge against plaintiff in error is based, provides as follows: "Whoever is found having any pick-lock, crow, key, bit or other instrument or tool, with intent to break and enter any building, ship or vessel, with intent to commit the crime of murder, rape, robbery, larceny, or other felony, shall be imprisoned in the penitentiary not less than one nor more than two years." While this section of the code has been in effect since the year 1874, we do not find that this court has been previously called upon to review a conviction under its terms. We are not, however, without some precedent, for similar statutes have been construed numerous times in the courts of last appeal in neighboring jurisdictions. The essence of the results reached is perhaps most cogently stated in 12 C.J.S., Burglary, sec. 69, where it is concluded that there are three elements to an offense under statutes such as ours. "(1) Adaptation and design of the tool or implement for breaking and entering. (2) Possession thereof by one with knowledge of its character. (3) Intent to use or employ such tool or implement in breaking and entering."

The element of possession is not at issue in this review, for it is admitted that plaintiff in error had the tools on his person, and knowledge of their character may be reasonably imputed to him. The questions of the adaptability of the tools, and of plaintiff in error's intent with respect to their use, thus remain as the major issues.

Generally speaking, a determination of what constitutes burglars' tools within the meaning of the statute has presented considerable difficulty. It is usually not necessary that the tools or implements were originally made or intended for an unlawful use, and, if they are suitable for breaking and entering burglariously, it is wholly immaterial that

they were also designed and adapted for honest and lawful uses. (9 Am. Jur., Burglary, sec. 86; 103 A.L.R. 1301; *State* v. *Hefflin,* 89 S.W. 2d 938.) It is also pointed out in the *Hefflin case* that the mere possession of tools, instruments or devices not adapted, designed or commonly used in breaking into buildings is not enough ·to subject the possessor to prosecution under statutes which relate only to tools used for breaking and entering. Our statute does not contain the words "burglars' tools," but embraces only such tools as may be used for the felonious purpose of breaking and entering a building. If the tools are adapted and designed for breaking or entering into a building and are possessed with an intent to unlawfully use them for that purpose, such possession constitutes the offense denounced by the statute. (*Com.* v. *Tivnon,* 8 Gray (Mass.) 375, 69 Am. Dec. 248.) It is within common knowledge, and the police officers in this case testified without contradiction, that a screw driver and pair of pliers, such as were found on the plaintiff in error, are suitable and are commonly used for breaking and entering, despite the fact they were originally designed and intended for innocent purposes; thus they come within the prohibition of our statute. However, in cases such as this, where tools are originally designed and intended for an innocent purpose, the intent of the possessor then becomes the most important element in an indictment brought under the statute. (*State* v. *Widenski,* 50 R.I. 148, 146 Atl. 407.) Peep flashlights, such as the one found in this case, were held not to be tools adapted to breaking and entering, in both the *Widenski* and *Hefflin cases,* and an indictment would not lie under the statute for its possession, alone. However, both courts held evidence relating to such a light was admissible when it was found with other tools which were so adapted, as bearing on the question of intent. We are in accord with that doctrine. Since the other tools found in the possession of plaintiff in error here could be used

as easily for an innocent purpose as for an illegal purpose, the question of his intent must be the controlling factor in establishing his guilt or innocence.

In considering the intent contemplated by statutes of this nature, the rule is summarized in 9 Am. Jur., Burglary, sec. 86, as follows: "Intent or a knowledge upon which an intent may be predicated is essential, but an intent to break into a particular building is not necessary; a general intent is sufficient." The offense thus is usually complete under such statutes when tools are possessed with intent to use them for a burglarious or other felonious purpose. It is incumbent upon us, therefore, to scrutinize the record to determine if there is sufficient evidence to justify a finding that plaintiff in error possessed the tools found on his person with an intent to use them feloniously. Though we find no direct evidence of intent, it has long been established that criminal intent may be shown by circumstantial evidence. (*People* v. *Weiss*, 367 Ill. 580; *People* v. *Beacham*, 358 Ill. 373; *People* v. *McLaughlin*, 337 Ill. 259.) It is, likewise, the rule that no distinction should be made between direct and circumstantial evidence, so far as their weight and effect are concerned. *People* v. *Buskievich*, 330 Ill. 532.

An examination of other decisions shows that the general burglarious intent of an accused having in his possession tools adapted for breaking and entering has been inferred from different circumstances accompanying such possession. It was shown in *People* v. *Jefferson*, 161 Mich. 621, 126 N.W. 829, that defendant had been a burglar and sneak thief by occupation for many years. In *Brown* v. *State*, 32 Ohio C.C. 93, and *People* v. *Howard*, 73 Mich. 10, 40 N.W. 789, it was shown that defendant associated with burglars. Other cases have found evidence of intent from the fact that the accused resisted and attempted to flee when arrested, (*People* v. *Thompson*, 33 App. Div. 177, 53 N.Y.S. 497); that accused had been guilty of

recent burglaries and had in his possession the fruits of such burglaries, (*State* v. *Kappen,* 191 Iowa, 19, 180 N.W. 307; *Fennen* v. *Commonwealth,* 240 Ky. 530, 42 S.W. 2d 744;) that he carried the tools secreted in his clothing, (*People* v. *Donovan,* 216 Mich. 231, 184 N.W. 863; *Scott* v. *State,* 91 Wis. 552, 65 N.W. 61); and that he had other tools in his custody which indicated defendant intended to use the tools, for the possession of which he stood charged, for a burglarious and criminal purpose. (*State* v. *Hefflin,* 338 Mo. 236, 89 S.W. 2d 938; *State* v. *Widenski,* 50 R.I. 148, 146 Atl. 407.) In looking to these cases for a guide or standard, we find none wherein the circumstances relied upon to establish intent can be considered comparable to the circumstances of the instant case.

The People argue that the facts of this case are analogous to those in *People* v. *Beacham,* 358 Ill. 373, where we upheld the conviction of a defendant charged with procuring an explosive with intent to use it for the unlawful injury or destruction of life and property. In that case defendant was arrested coming out of an alley in the rear of an office building carrying a fused bomb made from a syrup can. At the time of his arrest he was an unemployed coal miner, and the Peabody Coal Co., who officed in the building, was having difficulty with rival union organizations. Defendant, who answered the description of a person wanted for arson, contended that he had found the bomb and intended to turn it over to the authorities, and while the People produced no direct testimony that Beacham intended to use the bomb for an unlawful purpose, we said: "While mere possession will not lead to an inference of criminal intent as a matter of law, the structural nature of the bomb, the transparent tale of how defendant happened to be in possession of it, the many inconsistencies in his testimony, his confessed character, and the other circumstances, including the labor troubles, and his presence, armed with a bomb, in the vicinity of

the coal company's office at such an unusual hour, were circumstantial evidence from which the jury might reasonably infer a criminal intent as a matter of fact."

We do not have the same abundance of related and detrimental circumstances with regard to plaintiff in error's behavior and arrest in the present case. While he had been convicted of burglary some seventeen years before his arrest, and had served ten years as a penalty for his crime, there is no evidence that he had continued his felonious habits, or associated with criminals after his release in 1943. The evidence is uncontradicted that he worked as a handy man; that he was returning from an errand to perform such work when arrested, and that he needed and used tools of the kind he carried. The tools were carried normally with no attempt at secretion, nor did he resist arrest, attempt to flee or conceal his identity when stopped by the officers. His purpose in pin-pointing his flashlight may have been to protect his eyes while doing close work as he explained, and his statement that his eyes were weak was unrebutted. Nor can we infer an intent to commit larceny from the fact that he was unemployed and was found walking along the sidewalk in an area where there had been burglaries in previous months. The evidence before us shows that the route he was taking and the place of his apprehension lie in one of the normal routes from the post office to his home. Considered individually, or in concert, it is our opinion that the circumstances are not such to support an inference or a belief beyond reasonable doubt that plaintiff in error had the tools in his possession for a felonious purpose.

It is argued that the law has committed to the trial court, where a cause is tried by the court without a jury, the determination of the credibility of witnesses and of the weight to be accorded their testimony. (*People* v. *Martishuis*, 361 Ill. 178; *People* v. *Bolger*, 359 Ill. 58.) While this is true, yet, in a criminal cause, it is the duty of a

478

reviewing court to carefully consider all the evidence, and if it is not sufficient to remove all reasonable doubt of defendant's guilt and to create an abiding conviction that he is guilty, the judgment should be reversed. (*People* v. *Totten*, 381 Ill. 538; *People* v. *Downen*, 374 Ill. 146.) While circumstantial evidence may be relied upon for conviction, the circumstances proved must be sufficient to establish the guilt of the defendant beyond a reasonable doubt. (*People* v. *Buxton*, 362 Ill. 157; *People* v. *Samaras*, 355 Ill. 431.) The evidence in this case is not sufficient to prove plaintiff in error guilty beyond a reasonable doubt or to create an abiding conviction of his guilt, and the judgment of conviction must be reversed. Inasmuch as it appears that there is no further evidence which may be produced in support of the charge against the plaintiff in error, the cause will not be remanded for a new trial. *People* v. *Sheppard*, 402 Ill. 347; *People* v. *Bradley*, 375 Ill. 182.

The judgment of the circuit court of Madison County is reversed.

*Judgment reversed.*