THE PEOPLE OF THE STATE OF ILLINOIS, Plaintiff-Appellee, v. SAMUEL B. TURNER, Defendant-Appellant.

(No. 71-260; )

Fifth District—September 28, 1973.

Robert E. Farrell, Deputy Defender, of Mt. Vernon, (Richard E. Cunningham, Assistant Appellate Defender, of counsel,) for appellant.

John H. Ward, State's Attorney, of Taylorville, (James W. Jerz and Thomas F. Sullivan, both of Model District State's Attorneys Office, of Elgin, of counsel,) for the People.

Mr. PRESIDING JUSTICE GEORGE J. MORAN delivered the opinion of the court:

Defendant appeals from a judgment of the Circuit Court of Christian County finding him guilty of the crime of burglary.

Defendant was indicted for the crimes of burglary and theft. The burglary count of the indictment alleged that he knowingly entered the residence of Eugene and Marlena Gartshore with intent to commit a theft. The theft count alleged that on the same date and at the same residence he knowingly exerted unauthorized control over two .22 caliber rifles owned by Eugene Gartshore. The jury found him guilty on the burglary count but not guilty on the theft count.

Defendant contends that the evidence which was wholly circumstantial was insufficient to prove him guilty beyond a reasonable doubt.

Marlena Gartshore testified that she had been married to Eugene Gartshore for a little less than five years and that they had a daughter two years old. She and the defendant Sam Turner had been engaged for several months prior to her marriage. Her husband knew the defendant only as an acquaintance and defendant never visited in her home. She never went with the defendant or had anything to do with him since the engagement. She further testified that at approximately 10:30 P.M. on the night of January 8, 1971, while she was driving her car down Main Street in the city of Taylorville, accompanied by her two-year old daughter, the defendant pulled his car next to hers and signalled her

car to stop. She stopped and the defendant got out of his car and said to her, "If you don't go get me a gun, I'll go out to your house and break in and take one." She stated that he appeared to have been drinking. She then went directly to a friend's home and called the "county police or the sheriff's office." She explained to them what had happened and asked them to check the house because she was afraid he might carry out the threat. She called again in about 20 minutes, and again just before she went out to the mine to pick up her husband who was working the 4 to 12 shift. The last time she called, she asked the police to keep a watch on their home as she and her husband would be gone all night.

She picked her husband up at the mine and he then drove directly to his mother's home in Glen Carbon, Illinois. They arrived there about 1:30 A.M. About 5:00 A.M., her husband received a call that their home had been burglarized. They left Glen Carbon about 8:00 A.M., went to her doctor's office in St. Louis, Missouri and got back to Taylorville around noon. A pane of glass in their front door had been broken and two rifles were missing from her husband's gun rack in the living room.

She said she did not tell her husband of defendant's threat to burglarize their home because she did not want any trouble. She picked her husband up at the mine on this particular night because about once a month she had an appointment with a skin specialist in St. Louis, Missouri, and they leave directly from the mine, go to Glen Carbon, Illinois, stay for the night and then go to St. Louis the next morning. Glen Carbon is about ten miles from St. Louis.

A police officer testified that he was on duty at the police station in Taylorville at approximately 2:45 A.M., on January 9, when the defendant walked into the station carrying two unloaded rifles. The officer testified that he asked the defendant what he was doing with the guns and the defendant replied that he "didn't know." The officer asked the defendant to hand him the rifles and stated that it would be better for him (the officer) to keep the two rifles since the defendant could not produce a registration card for the weapons. The defendant agreed and the officer filled out a receipt for the guns. This officer and other witnesses testified that the defendant had been drinking, that he was "a little wobbly on his feet, a little slurred with his talking", acted "very erratic", etc. Eventually the defendant was arrested for disorderly conduct and taken to the county jail. Around 4:20 A.M., deputies of the county sheriff's department discovered that the complaining witness's home had been broken into. The complaining witness later identified the two rifles which the defendant had brought into the police station as being his rifles which were missing from his home after the break-in.

The defendant testified that around 2:00 in the morning he left a bar, got into his car, reached into the back seat for a coke in order to mix another drink, and felt the two rifles lying on the back seat. He testified that he did not know how the rifles got there. He drove to the police station and took the guns in to the police and turned them over to the officer. He testified that he did not steal the rifles or break into the complaining witness's home or threaten to do so. He also testified that he received a call from Marlena during the afternoon of January 8, asking if he was coming out that night. He told her no because her husband had found out about them.

■■ We first consider the contention that there was insufficient evidence to support the verdict. Here the evidence linking the defendant with the alleged crime is entirely circumstantial. In cases where the proof is entirely circumstantial, it must produce a reasonable and moral certainty that the accused and no one else committed the crime. (*People v. Grizzel*, 382 Ill. 11; *People v. Widmayer*, 402 Ill. 143.) His guilt must be so thoroughly established as to exclude every other reasonable hypothesis. (*People v. Sorrells*, 293 Ill. 591; *People v. Burgard*, 377 Ill. 322; *People v. Yaunce*, 378 Ill. 307; *People v. Crego*, 395 Ill. 451.) It is essential to a conviction upon circumstantial evidence that the facts proved be not only consistent with the defendant's guilt, but that they be inconsistent, upon any reasonable hypothesis, with his innocence. (*People v. Holtz*, 294 Ill. 143; *People v. Wilson*, 400 Ill. 461.) Where the circumstances can be explained upon a reasonable hypothesis consistent with innocence and leave a serious and grave doubt of guilt, a conviction cannot stand. (*People v. Widmayer, supra; People v. Taylor*, 410 Ill. 469; *People v. Magnafichi*, 9 Ill.2d 169.) If there is any reasonable hypothesis arising from the evidence, consistent with the innocence of the defendant, it must be adopted. *People v. Wilson*, 400 Ill. 461.

It is undisputed that the home of the complaining witness was broken into and two rifles were missing. No direct evidence connects the defendant with the entrance into the house, and only two items of circumstantial evidence do so. The first item is the alleged threat made by the defendant to the wife of the complaining witness, that he was going to go to her house, break in, and take a gun, The second item is the fact that the defendant came to the police station early the following morning with two unloaded rifles and turned them over to the police. These rifles were subsequently identified by the complaining witness as being the two which were missing from his home. We will examine each of these items of evidence.

First is the matter of the alleged threat. Defendant denied making the threat and there was no corrobation of the threat at trial.

Second is the fact that defendant gave two rifles to an officer at the police station early the next morning. The officer testified that he asked defendant where he got the rifles and defendant replied that he "didn't know." Defendant testified that he left a tavern about 2:00 A.M., went to his car, reached into the back seat to get a coke to mix a drink, and felt the rifles. He denied that he had stolen them.

■■ The State contends that the rule of recent unexplained possession of stolen property should be applied to sustain the conviction. Recent unexplained possession of stolen property is prima facie proof of guilt of burglary unless other evidence creates a reasonable doubt of guilt. The rule should be applied only when all its qualifications are met. In this case there was no showing that defendant had any knowledge that the rifles were stolen, which is one qualification of the rule. However, a more serious flaw in the State's contention is the nature of defendant's possession and explanation. The rule is based on logic and human experience. It is usually applied where a person is discovered with stolen goods in his possession or the goods are discovered in the person's home or locked in the trunk of his car, or facts of this nature. In such a situation where a person has exclusive control or possession of recently stolen goods, it is logical to require him to explain his possession and if he fails to explain it, to infer that he stole the goods. However, this defendant was not caught or discovered with the rifles. Instead, he voluntarily went to the police station to turn over the rifles which he stated he found. This is behavior consistent with the proper motives of a law-abiding citizen. The logic behind the rule simply does not extend to the facts of this case. Considerable research located only one case with facts similar to those of this case.

■■ In *Edge v. State* (1928), 96 Fla. 796, 119 So. 332, a county courthouse was broken into and an old gun taken away. The next morning the defendant reported the matter to the janitor and said that during the night someone appeared on the courthouse grounds and when the defendant ordered the person to stop, the person dropped the gun. The defendant recovered it and carried it to his home. Not knowing what to do with it or where it came from, except that it had been in the possession of one who acted suspiciously when the defendant called to him, the defendant reported the matter to the janitor. Defendant was convicted of breaking and entering the county courthouse with intent to steal property of the value of less than $50 on this evidence. In reversing his conviction, the Supreme Court of Florida stated:

> "The possession by a person of property which has been recently stolen from a building may be sufficient, if unexplained, to war-

rant a conviction of such person of the crime of entering the building with intent to steal. [Citation.]

There is, however, no presumption of law flowing from the unexplained possession of goods recently stolen that the possessor stole them. It is only when such possession is unexplained that guilt may be inferred as a matter of fact by considering such unexplained possession in connection with all the other circumstances of the case. [Citations.]

An important circumstance to be considered in this case is the prompt reporting of the incident which the accused said occurred on the courthouse grounds that night, and the voluntary production by him of the gun which he said he recovered, and which was alleged to have been stolen. Such circumstance is certainly not consistent with a desire to appropriate the property, claim it as his own, or conceal it. If larceny was the purpose of entering the house, the voluntary reporting of the supposed incident, in which the accused recovered the gun, and immediate production of it by him, negative the idea of any purpose to steal it. If there was no purpose to steal the gun, there was a failure to prove the intention with which the house was entered.

The accused was not found in possession of the property, in the sense that he had it secreted and someone else discovered it. He voluntarily reported it to the authorities.

His account of how he acquired it may not have been believed by the jury, and the account may have been neither reasonable or plausible, but the fact inconsistent with the idea of larceny remains, viz., that he voluntarily produced the property and disclaimed any title or interest in it.

The evidence is not sufficient to sustain the verdict, so the judgment is reversed." 119 So. at 333.

We adopt the reasoning of *Edge v. State* and hold that the rule of recent, unexplained possession cannot be applied to a case where a defendant voluntarily goes to the police and turns over items which he states are not his and he does not know how they got into his car. In cases where the proof is entirely circumstantial, if there is any reasonable hypothesis arising from the evidence, consistent with the innocence of the defendant, it must be adopted. *People v. Wilson, supra.*

To sustain this conviction, we must believe beyond a reasonable doubt that the defendant was first considerate enough to warn his intended victim of his plans to burgle her house, and then foolish enough to voluntarily turn over the fruits and evidence of his crime to the police. This alleged behavior is difficult to believe.

Mrs. Gartshore testified that the defendant pulled her car over and threatened to burgle her residence. The State's evidence is that the Gartshores and the defendant barely spoke to each other. On direct examination Mrs. Gartshore testified as follows:

"Q. About how long before January 8, if you know, had it been since you last saw or talked with Sam Turner?

A. I think it had been a couple of weeks before that. My husband and I were out for the evening and we saw him at the place we were at.

Q. Did you have a speaking acquaintance with Sam, both you and your husband?

A. No.

Q. I mean did you speak with each other or say hello when you would meet each other?

A. No, I did not speak to him.

\* \* \*

Q. Does your husband know Samuel Benjamin Turner?

A. As an acquaintance, I think, only.

Q. Now, during the years of your marriage has Samuel Benjamin Turner visited in your home?

A. No.

Q. Have you had any social relationship between him and your husband and yourself?

A. No.

Q. Been places together?

A. No."

Despite the testimony of the Gartshores concerning the lack of communication between the Gartshores and Turner, the State contends that the evidence shows that the defendant pulled Mrs. Gartshore over to the side of the street in order to conversationally inform her that he intended to burgle her residence. This is strange behavior for a burglar. Since both Gartshores testified that the defendant had never been in their marital home, there is nothing in the record to indicate how Turner could have learned of the existence of the gun or guns he was allegedly seeking, much less their location in the house.

There is no evidence in the record that defendant knew or had any reason to know that the Gartshores would be gone that night, yet he supposedly entered the house by breaking out the glass pane in the door —which would probably awaken anyone in the house. Yet we must believe beyond a reasonable doubt that this occurred, or we must reverse. Defendant's explanation leaves some suspicions, yet it is an innocent hypothesis consistent with the proof. The circumstantial evidence here is

not the quality of evidence upon which a person should be found guilty beyond a reasonable doubt. The conviction cannot stand unless we believe that defendant made the threat testified to by the wife of the complaining witness.

In *People v. Buchholz,* 363 Ill. 270, the testimony of the complaining witness that the defendant, after robbing her and finding she had no money, voluntarily accompanied her home and supplied her with his name and telephone number was held to be sufficiently improbable as to leave reasonable doubt of the defendant's guilt, and his conviction was reversed. In *People v. O'Connor,* 412 Ill. 304, the alleged victim of a multiple rape testified that after the attacks the defendants accompanied her to various taverns where many people were present and allowed her to use the telephone and go to the ladies room while they waited for her. The convictions were reversed because her testimony was so improbable and incredible as to raise serious doubt as to the guilt of the defendants. In *People v. Coulson,* 13 Ill.2d 290, it was held that the testimony of the complaining witness that five men who took his wallet at gunpoint voluntarily accompanied him to his home on the vague promise of more money, and permitted him to go inside alone while they obligingly waited outside, trusting that their victim would not call the police, "* * * taxes the gullibility of the credulous," and was too improbable and unconvincing to sustain a conviction.

■■ We find the evidence in this case to be of a similar unconvincing character. It is incredible to believe that a burglar would warn his intended victim and then voluntarily turn over the fruits of his crime to the police. We have already held that the act of turning the rifles in to the police is susceptible of an innocent interpretation which must be resolved in favor of the defendant. The testimony of the alleged threat is improbable and unconvincing. When evidence is so unsatisfactory as to raise a serious doubt of defendant's guilt, the conviction must be reversed. *People v. Williams,* 414 Ill. 414; *People v. Buchholz,* 363 Ill. 270.

We find that the evidence upon which this conviction is based is so unsatisfactory and unreasonable that it raises a serious doubt of defendant's guilt of the crime of burglary, which must be proved as charged beyond a reasonable doubt. For the foregoing reasons, this case is reversed.

Judgment reversed.

CREBS and JONES, JJ., concur.