# MARTIN *v.* STATE
[No. 4, October Term, 1953 (Adv.).]

68

*Decided July 2, 1953.*

The cause was argued before SOBELOFF, C. J., and DELAPLAINE, COLLINS, HENDERSON and HAMMOND, JJ.

*William H. Murphy,* for the appellant.

*Ambrose T. Hartman, Assistant Attorney General,* with whom were *Edward D. E. Rollins, Attorney General,* and *Anselm Sodaro, State's Attorney for Baltimore City,* on the brief, for appellee.

HAMMOND, J., delivered the opinion of the Court.

The appellant, Raymond Martin, was held for trial upon four indictments, three of which charged him with burglary, and the fourth with being a rogue and a vagabond, within the meaning of Article 27, Section 576 of the Code (1951 Ed.). The appellant was tried

in the Criminal Court of Baltimore City by Judge Smith, without a jury. He plead not guilty. One of the burglary indictments was abandoned during the course of the trial. He was found guilty on each of the remaining indictments and sentence was withheld, pending a motion for a new trial. The motion for the new trial was granted on the two indictments for burglary and was denied on the indictment charging him with being a rogue and a vagabond. He was sentenced to serve not more than two years in the Maryland Reformatory for Males, and this appeal is from that judgment and sentence.

On December 21, 1952 at 11:05 P.M., the appellant was seen by a police officer in the rear of a factory owned by the Phoenix Manufacturing Company, which is located at 1201 Sharp Street, Baltimore. The appellant, on being questioned concerning his presence in the rear of the factory, answered that he "was just walking through the alley", and that he now lived in that part of town, that he had been at a dance at a small club in Peach Alley, and had stopped to relieve himself. He was held for investigation. At the Station House he was searched, and was found to have in his possession a pair of pliers, three screw drivers, a wrench, and a drill, all of which were stuck down inside his jacket. The factory had been twice burglarized within five weeks. On one occasion, a dozen hunting trousers and several dozen men's and boys' shirts were taken. The other time some fifteen dozen men's and boys' shirts were taken.

Section 576 of Article 27 of the Code, under which appellant was convicted, in the part here applicable, reads as follows: "If any person shall be apprehended having upon him any pick-lock, key, crow, jack, bit, or other implement, at places and under circumstances from which an intent may be presumed feloniously to break and enter into any dwellinghouse, warehouse, storehouse, stable or outhouse, * * * every such person shall be deemed a rogue and vagabond, * * *."

The appellant makes two contentions—one, that the articles found in his possession at the Station House should not have been admitted in evidence because his arrest was illegal and therefore, the evidence found as a result of that arrest is not admissible; two, that even with the implements found on him in evidence, the charge of which he was found guilty is not sustained by the evidence.

The question as to the admissibility of the evidence arose in this manner. Officer Cook was asked by the State's Attorney to give the time, date and circumstances of the arrest. The officer's testimony, with the objection of the appellant's counsel, the subsequent testimony, and the motion to strike, is shown by the record as follows:

"A. About 11:05 p.m., December the 21st, 1952, while on my way to work, I observed Raymond Martin, colored, age 17, in the rear of 1201 Sharp Street. I picked Raymond Martin up for investigation, and brought him to the station house, where I turned him over to Sergeant Lansdowne and Officer Hogan. And with Sergeant Lansdowne and Officer Hogan we went to 1607 Rutland Avenue, Raymond's home, and there we found two pair of thread clippers that were reported in a burglary in the company located in the building.

"MR. MURPHY: I object to that, Your Honor. I object to this mode of —

"THE COURT: Yes, reported—strike it out.

"MR. ROGERS: All right.

"Q. (By Mr. Rogers) Now, Officer, before you go into that, what, if anything, did you find in the possession of this boy at the time you made the arrest?

"A. When the man was searched at the station house we found three screw drivers, and a drill in Raymond's possession.

"Q. Now, where did he have them?

"A. And a pair of pliers. Had them stuck down inside his jacket.

"Q. Now, I show you these tools. Can you identify them, Officer? Screw drivers, wrench, and a few other items. Can you identify these items?

"A. I can.

"Q. And what are they, Officer?

"A. Those are the three screw drivers, wrench, a pair of pliers, and a drill that were taken from Martin, on his person at the station house.

"MR. ROGERS: We offer all of these as State's Exhibit Number 1, Your Honor.

"Q. (By Mr. Rogers) When he got to the station house, did you question him, Officer?

"A. Yes, I did.

"Q. And at that time what did you say to him, and what did he say to you?

"A. We asked him what he was doing in the rear of 1201 Sharp Street, and he stated he was just taking a walk through the alley. He was taken short and stopped there for that reason. And when I asked him what he was doing in this part of town, he told me he was living over here now.

"After being taken to the station house and talking to him for a while, still admitted living at 1607 Rutland Avenue.

"Q. Now, at that time, did he say anything to you about a dance on that evening?

"A. There was a small club up in Peach Alley, and Raymond claims he was coming from there, a bunch of juveniles, that sort of club, were with him up there. He stated he was coming from there.

"MR. ROGERS: All right, witness with you.

"MR. MURPHY: If Your Honor pleases, I move to strike out all of the testimony of this officer, for the

reason that it now appears that when the arrest was made there was no probable cause, no reason whatever, for having arrested this man. The officer testimony states.

"THE COURT: The motion is overruled."

We will assume, without deciding that the arrest of the appellant was illegal, and that after being indicted as a rogue and vagabond, a misdemeanor, he could upon motion to quash, prior to trial as permitted by Rule 3, Criminal Rules of Practice and Procedure, or by a timely objection to the evidence when offered at the trial, have prevented the introduction into evidence of the implements found on him. We think, however, that the appellant waived this right by failing to object to the evidence at the time it was offered. The principle governing the time for objection, which has been stated and restated, is that the one against whom evidence is offered must object as soon as the applicability of the evidence is known or should reasonably have been known to him. *Wigmore on Evidence*, Third Edition, Section 18. In *Dick v. State*, 107 Md. 11, 68 A. 286, 287, 576, the defendant in a criminal case, at the close of the questioning of a witness, objected to testimony. Objection was overruled. The Court held that the evidence "was given without any objection, and so went to the jury, and the objection as made came too late."

In *Klecka v. State*, 149 Md. 128, 131 A. 29, it was held that an objection to the admissibility of evidence containing a specific question, must ordinarily be made as soon as the question is stated and before the answer is given or there is a waiver. See also *Deibert v. State*, 150 Md. 687, 693, 133 A. 847; *Courtney v. State*, 187 Md. 1, 4, 5, 48 A. 2d 430; *Asner v. State*, 193 Md. 68, 65 A. 2d 881; *O'Connor v. Estevez*, 182 Md. 541, 35 A. 2d 148; *Rogers v. United States*, 340 U. S. 367, 71 S. Ct. 438, 95 L. Ed. 344.

Here, the implements found on the appellant were the very essence of the charge against him. He did not

avail himself of the opportunity to move before trial that they be returned to him or held unavailable as evidence against him, because of the illegality of the arrest, nor did he object at the trial until they were fully in evidence. There was no element of surprise and no lack of notice that their applicability was immediate, fundamental and vital. We think the waiver of the appellant was complete and that the motion to strike came too late. In *Asner v. State, supra,* there had been a motion to quash and a specific objection to the very evidence which later slipped in without objection. Here there is neither.

Maryland's policy has been to adhere consistently to the rule that evidence wrongfully obtained is not for that reason alone inadmissible. It is held that the Courts will not inquire into how evidence was procured, but if it is relevant, will admit it. *Meisinger v. State,* 155 Md. 195, 141 A. 536, 142 A. 190; and *Johnson v. State,* 193 Md. 136, 66 A. 2d 504. This common law rule still applies in felony cases, although in prosecutions for misdemeanors, it has been abrogated by the provisions of Section 5 of Article 35 of the Code (1951 Ed.), known as the "Bouse Act"; yet the protection of the Bouse Act may be waived by the traverser as we find it was here. See *Courtney v. State, supra,* at page 7 of 187 Md., page 430 of 48 A. 2d. An illegal arrest does not prevent one from being validly indicted and tried. *Bryant v. Warden,* 196 Md. 646, 74 A. 2d 833.

It is clear that a waiver as to evidence illegally obtained operates with full effectiveness and results in the evidence admitted being given the same probative force as if it were competent. 23 C. J. S., Criminal Law, Section 1078 c. *Segurola v. United States,* 275 U. S. 106, 48 S. Ct. 77, 80, 72 L. Ed. 186. Mr. Chief Justice Taft there said to the Court: "To preserve their rights under the 4th Amendment, they must at least have seasonably objected to the production of the liquor in court. This they did not do, but waited until the liquor had been offered and admitted and then for the first

time raised the question of legality of seizure and probable cause as a ground for withdrawing the liquor from consideration of the jury. This was too late." See *Courtney v. State, supra.*

The appellant's argument that the evidence is insufficient to sustain a conviction of being a rogue and a vagabond actually is divided into several parts. The first suggests that the implements found on the appellant are not the ones specifically described in the statute and should not be considered as coming within the compass of the words "or other implement".

Then he says that the building which it is claimed he intended to enter was a factory and that this is not one of the buildings mentioned in the statute. Next, he suggests that the crime with which he is charged is proven not by an overt act but by an intent, and that there is no evidence as to what he had in mind at the time he was arrested. Finally, he claims that the first three infirmities make plain that the statute is so vague and indefinite that it does not meet the standard of definiteness and the certainty required by law to make it effective and constitutional.

In deciding whether the implements found on the appellant come within the category described in the statute, it should be noted that there is prescribed possession of a "bit". There was found on the appellant a "drill". The distinction between a bit and a drill is that a bit is a pointed, threated, cylindrical tool used for boring wood, while the same tool used for boring metal is called a drill; colloquially, the two are the same. The appellant also had under his jacket three screw drivers and a pair of pliers. The cases hold generally that it is not necessary that the tools or implements forbidden by the statutes be made or intended only for unlawful use. If they are suitable for breaking and entering, it is wholly immaterial that they were also designed and intended for lawful uses. *State v. Hefflin*, 338 Mo. 236, 89 S. W. 2d 938, 103 A. L. R. 1301; and *People v. Taylor*, 410 Ill. 469, 102 N. E. 2d 529, 531.

In the case last cited, the Court said: "It is within common knowledge, and the police officers in this case testified without contradiction, that a screw driver and pair of pliers, such as were found on the plaintiff in error, are suitable and are commonly used for breaking and entering, despite the fact they were originally designed and intended for innocent purposes; thus they come within the prohibition of our statute." See also *Commonwealth v. Cataldo*, 326 Mass. 373, 94 N. E. 2d 761; *State v. Furlong*, 216 Iowa 428, 249 N. W. 132; 9 *Am. Jur., Burglary*, Section 86; note, 103 A. L. R. 1313, 1322.

To the contention that the building which the appellant is presumed to have intended to enter is one not specifically mentioned in the statute, the answer is, we think, that the terms "warehouse" and "storehouse" cover the building of the Phoenix Manufacturing Company. Obviously, the goods which are manufactured in that building are stored there for some time after they are finished. The Record confirms this by the example of the finished products stolen in the previous burglaries. The Courts have given broad construction to similar statutes. See *Horn v. Commonwealth*, 289 Ky. 600, 159 S. W. 2d 417; *Moseley v. State*, 70 Ga. App. 610, 29 S. E. 2d 86; *State v. Turnbaugh*, 79 Ohio St. 63, 85 N. E. 1060; and *Andrews v. State*, 123 Ala. 42, 26 So. 522. The last case is typical, holding that a room in a railroad depot which was used to store freight is a warehouse within the meaning of a statute making it a crime to steal from a warehouse.

This brings us to a consideration of whether the appellant, possessing forbidden implements, was apprehended, "at places and under circumstances from which an intent may be presumed feloniously to break and enter into . . ." the plant of the Phoenix Manufacturing Company. In *People v. Taylor, supra,* the Supreme Court of Illinois said this: ". . . in cases such as this, where tools are originally designed and intended for an innocent purpose, the intent of the possessor

then becomes the most important element in an indictment brought under the statute. . . It is incumbent upon us, therefore, to scrutinize the record to determine if there is sufficient evidence to justify a finding that plaintiff in error possessed the tools found on his person with an intent to use them feloniously. Though we find no direct evidence of intent, it has long been established that criminal intent may be shown by circumstantial evidence. . .

"An examination of other decisions shows that the general burglarious intent of an accused having in his possession tools adapted for breaking and entering has been inferred from different circumstances accompanying such possession. It was shown in *People v. Jefferson*, 161 Mich. 621, 126 N. W. 829, that defendant had been a burglar and sneak thief by occupation for many years. In *Brown v. State*, 32 Ohio C. C. 93, and *People v. Howard*, 73 Mich. 10, 40 N. W. 789, it was shown that defendant associated with burglars. Other cases have found evidence of intent from the fact that the accused resisted and attempted to flee when arrested, (*People v. Thompson*, 33 App. Div. 177, 53 N. Y. S. 497;) that accused had been guilty of recent burglaries, and had in his possession the fruits of such burglaries, (*State v. Kappen*, 191 Iowa 19, 180 N. W. 307; *Fennen v. Commonwealth*, 240 Ky. 530, 42 S. W. 2d 744;) that he carried the tools secreted in his clothing, (*People v. Donovan*, 216 Mich. 231, 184 N. W. 863; *Scott v. State*, 91 Wis. 552, 65 N. W. 61;) and that he had other tools in his custody which indicated defendant intended to use the tools, for the possession which he stood charged, for a burglarious and criminal purpose. (*State v. Hefflin*, 338 Mo. 236, 89 S. W. 2d 938; *State v. Widenski*, 50 R. I. 148, 146 A. 407.)"

Here we have several of these elements. For example, the appellant carried the tools secreted in his clothing. When questioned as to why he was in the rear of the factory, he told conflicting and untruthful stories, claiming that he lived in that neighborhood, whereas actually

he lived across town. There were found at his home a red shirt and a green shirt, and he was wearing a black and white checked shirt. These were identified by the factory manager of the Phoenix Manufacturing Company as having been made at the factory. The appellant's explanation of his possession of them was that he had found them in a trash can somewhere along Broadway, an explanation so inherently incredible that he may well have been regarded by the trier of the facts as the possessor of the fruits of a recent burglary of the building behind which he was apprehended.

The intent necessary to conviction under the statute need not necessarily be apparent to the officer making the arrest at that time. The forbidden implements, as in this case, may not then be apparent. The fact that the traverser was the possessor of the fruits of a recent burglary or had a criminal record admissible as bearing on his present intent, would almost never be known. It is sufficient if all of the facts as they are known at the time of the trial create the presumption required by the statute.

Coming down to the final contention of the appellant, he argues that "a statute which prohibits the doing of an act on terms so vague that persons or ordinary intelligence must necessarily guess at its meaning and differ as to its application, violate the constitutional guarantee of due process of law". *Blum v. Engelman,* 190 Md. 109, 57 A. 2d 421; *State v. Magaha,* 182 Md. 122, 32 A. 2d 477. He contends that Section 576 of Article 27 of the Code is so vague and indefinite as to make it an unconstitutional statute. He made no claim, however, to its unconstitutionality at the time of the trial, or indeed, at any time before he appealed to this Court. Rule 9 of the Court of Appeals and Section 10 of Article 5 of the Code (1951 Ed.) provides that: "In no case shall the Court of Appeals decide any point or question which does not plainly appear by the record to have been tried or decided by the Court below." The principle enunciated by the quoted language is generally

applicable where the constitutionality of a statute is involved. 4 C. J. S. Appeal and Error, Sections 234 and 240. This Court has so applied it. See *Finance Co., Inc. v. Catterton,* 161 Md. 650, 656, 158 A. 16. The principle has also been held to control in cases where the denial of a constitutional right was not questioned at the time of trial and was relied on here. *Apple v. State,* 190 Md. 661, 59 A. 2d 509; and *Kirschgessner v. State,* 174 Md. 195, 198 A. 271. It is also to be noted that this Court has, in two cases, sustained convictions under Section 576. *Kay v. State,* 167 Md. 218, 173 A. 246; and *Bevans v. State,* 180 Md. 443, 24 A. 2d 792. As we have seen, the Maryland rogue and vagabond law, in the part here involved, is substantially the equivalent of the statute found in many States which make a criminal offense the possession of burglary implements with intent to use them as such. These statutes have been upheld consistently. See 12 *C. J. S. Burglary,* Section 69.

We think that even if the point were before us for decision, there would be no merit to the appellant's contention as to unconstitutionality.

We find that the evidence was sufficient to sustain the conviction and that there was no error in the verdict of the trial court on the charge of being a rogue and vagabond. The possession of the implements found on the appellant was not justified by any explanation which would lead to a finding that they were had for a lawful purpose. They were secreted in his clothing, and the presence of the accused in the rear of the factory was never satisfactorily explained, particularly in view of the fact that there had been found in his home shirts which had been made in that factory.

*Judgment affirmed, with costs.*