(No. 32907.—

The People of the State of Illinois, Defendant in Error, *vs.* Angelo Taranto, Plaintiff in Error.

*Opinion filed March 17, 1954—Rehearing denied May 19, 1954.*

CHARLES A. BELLOWS, of Chicago, for plaintiff in error.

LATHAM CASTLE, Attorney General, of Springfield, and JOHN GUTKNECHT, State's Attorney, of Chicago, (JOHN T. GALLAGHER, RUDOLPH L. JANEGA, and ARTHUR F. MANNING, all of Chicago, of counsel,) for the People.

Mr. JUSTICE KLINGBIEL delivered the opinion of the court:

Plaintiff in error, Angelo Taranto, was tried in the criminal court of Cook County on two indictments, the first charging possession of burglar's tools with intent to break into the dwelling house of one Dana Summers and commit larceny, and the second charging an attempt to commit burglary of Dana Summers's apartment. He was found guilty on the first indictment and sentenced to imprisonment for a term of one to two years. He was found not guilty on the second indictment. He prosecutes this writ of error to review the judgment of conviction, contending that the evidence is insufficient to prove either his pos-

session of the tools or the precise intent alleged in the indictment.

No testimony was offered on behalf of plaintiff in error. The evidence presented by the People shows that on April 4, 1952, officers Coffy and Gallagher were detailed to a 13-story co-operative apartment building at 2666 East Seventy-third Street, Chicago, and were in full uniform at the time. Entrance to the building is gained through two vestibules. The outer vestibule is about nine feet wide by fifteen feet long. On the right are the bells and mailboxes for the apartment building. On the left is a glass door leading into a meeting room for the occupants of the building. This glass door is a mirror when viewed from within the outer vestibule, but is transparent glass when viewed from inside the meeting room. At the north end of the outer vestibule is a door with glass on either side of it leading into the inner vestibule. The door was locked on the night in question. The inner vestibule is about twelve by sixteen feet in dimension and has self-service elevators at the north end.

Officers Coffy and Gallagher arrived on duty at this building at about 7:00 o'clock in the evening and stationed themselves in the meeting room behind the transparent door. At about 8:00 P.M. a man, later identified as plaintiff in error, walked into the building and rang one particular doorbell twice for about ten seconds at a time. He then left, and about three minutes later he re-entered the building and walked directly to the door that separates the inner and outer vestibules and admitted himself as if he were putting a key in the door. He then took the self-service elevator, and officers Coffy and Gallagher stepped out of the meeting room. Officer Coffy rang the bell to the building engineer's first-floor apartment and officer Gallagher read the name on the bell plaintiff in error had rung. The officers observed the ascent of the elevator to the twelfth floor on the elevator indicator. The building

engineer, Leaf, joined the officers in the inner vestibule, and they waited for the elevator to come down. It remained on the twelfth floor about four to five minutes, then came down to the sixth floor where it remained about a minute and a half and then down to the second floor where it remained about a minute and finally it came down to the first floor. Plaintiff in error stepped out of the elevator whereupon officer Coffy asked him what he was doing there and he said he lived there. The officers then asked Leaf if that were so and he said no. Officer Gallagher said, "You are trespassing on private property; you are under arrest." Plaintiff in error stated that the officers should wait until he got his wife and she would tell them who he was, and he started toward the door separating the two vestibules. Officer Coffy drew his gun and put plaintiff in error in a corner and told officer Gallagher to search him. Plaintiff in error was standing with his left hand in his pocket. Officer Gallagher caught hold of his hand and pulled it out, and with it came two pieces of cellophane. One of them slipped through his fingers and fell to the floor. The officer then put his hand in plaintiff in error's pocket and found two more objects which were like S-shaped hooks. Plaintiff in error began to resist the search and a fight ensued in the inner vestibule. During the course of the fight officer Coffy was struck on the head and kicked in the groin, and plaintiff in error grabbed officer Gallagher's left thumb and bent it backward and stamped on the officer's toes with his heel. The struggle carried the three men through the door separating the two vestibules into the outer vestibule. There, officer Gallagher grabbed plaintiff in error by his left arm, and, with the other, plaintiff in error was attempting to open the outside door. At that time plaintiff in error was facing officer Coffy and was about three feet away from him. Officer Coffy fired a shot, striking plaintiff in error in the right thigh. After he was shot plaintiff in error broke away from officer

Gallagher and ran about fifteen feet west of the entrance to 2666 East Seventy-third Street before he was again apprehended by the two officers. Officer Gallagher caught hold of his sleeve and plaintiff in error pulled his arm out of his overcoat and was attempting to put the coat over the officer's head. Officer Coffy then struck plaintiff in error over the head with the butt of his gun. At that time four or five police squad cars arrived on the scene and plaintiff in error was subdued and placed in a squadrol, a small police wagon, and removed to the hospital. The officers returned to the inner vestibule where they found two pieces of cellophane on the floor. Officer Coffy testified he saw plaintiff in error throw them there. A search of plaintiff in error's clothing after he was finally subdued also revealed a long slender piece of steel. Officer Frederickson testified that the People's exhibits, the S-shaped objects, the cellophane, and the piece of steel, were capable of being utilized as bolt releases and lock picks. No evidence was introduced associating defendant's activities or intentions with the specific apartment of Dana Summers.

Plaintiff in error argues that the failure of the building engineer, Leaf, to testify to seeing the objects taken from plaintiff in error renders of doubtful value the officers' testimony to that effect. It is further argued that the testimony of a third officer—to the effect that he was given certain keys allegedly found on defendant—is inconsistent with the testimony of the arresting officers that pick-locks and cellophane were found on defendant, and that a reasonable doubt is thus raised as to defendant's possession of such objects. There is no merit in the contention. The testimony of the arresting officers that they found the objects on defendant is sufficient to support such a finding, in the absence of evidence to the contrary. Positive testimony of a credible witness, uncontradicted and unimpeached either by positive evidence or by circumstan-

tial evidence, intrinsic or extrinsic, cannot be disregarded but must control the decision of a court or jury. (*People v. Rasof,* 363 Ill. 431.) The matters relied upon by plaintiff in error neither contradict nor impeach the positive testimony of the officers.

It is next insisted that the prosecution failed to prove plaintiff in error had the intention of breaking into the particular apartment mentioned in the indictment, and that this intention is an essential element of the offense alleged. Apparently to support the position he argues that the decision on the second indictment, finding him not guilty of the attempt to burglarize the apartment of Dana Summers, is an adjudication that he did not have the alleged intention. That such a conclusion does not follow is so obvious that authority is superfluous. In the commission of any crime there must be a union or joint operation of act and intention (or criminal negligence), and a failure to prove either will prevent conviction. A finding of not guilty must result from failure to prove the act, even though the intention be conceded. Clearly, such a finding on the second indictment can have no effect in proving the absence of a criminal intent.

The obvious lack of merit in this argument, however, does not dispose of the contention that the alleged intent was not proved. Although plaintiff in error fails to pursue the contention, other than by the worthless argument referred to above, we shall assume he bases it upon the proposition that if an intent to break into a particular building is alleged it must be proved, even though unnecessary in the absence of the particularity of allegation. Section 39 of division I of the Criminal Code defines the crime here involved, and fixes the punishment: "Whoever is found having any pick-lock, crow, key, bit or other instrument or tool, with intent to break and enter any building, ship or vessel, with intent to commit the crime of murder, rape, robbery, larceny or other felony, shall be imprisoned in

the penitentiary not less than one nor more than two years." (Ill. Rev. Stat. 1953, chap. 38, par. 87; Jones Ann. Stat. 37.067.) If tools are adapted and designed for breaking and entering a building and are possessed with an intent to use them unlawfully for that purpose, their possession constitutes the offense described. The intent required by the statute is a general intent to use the tools for a criminal purpose, and it is not necessary to allege an intent to break into a particular building. (*People* v. *Taylor*, 410 Ill. 469, 475.) Thus the indictment in this case would have adequately charged the crime even if the description of the premises had been omitted. The question, then, is whether the unnecessary allegation, specifying the premises intended to be burglarized, is a matter which the State is required to prove. The rule is well established that every material allegation in the indictment must be proved beyond a reasonable doubt before the defendant can be legally convicted. (*People* v. *Cohen*, 352 Ill. 380, 382.) It is also clear, we think, that an immaterial allegation need not be so proved. An averment is material when it is essential to the crime or cause of action and cannot be stricken from the indictment or complaint without leaving it insufficient. As we have observed, the averment that the building intended was the dwelling of one Dana Summers is not essential to the crime, and could have been stricken without rendering the indictment insufficient. It follows that the failure to prove the allegation did not prejudice plaintiff in error, and does not warrant a reversal.

Plaintiff in error alleges other invasions of his rights, but does not attempt to show they caused error in the judgment of conviction. We have, nevertheless, examined the contentions and find them to be without merit. The judgment of the criminal court of Cook County is affirmed.

*Judgment affirmed.*