(No. 37149

THE PEOPLE OF THE STATE OF ILLINOIS, Defendant in Error, *vs.* STANLEY POLENISIAK, Plaintiff in Error.

*Opinion filed November 30, 1962.*

JULIUS LUCIUS ECHELES, of Chicago, for plaintiff in error.

WILLIAM G. CLARK, Attorney General, of Springfield, and DANIEL P. WARD, State's Attorney, of Chicago, (FRED G. LEACH and E. MICHAEL O'BRIEN, Assistant Attorneys General, and RUDOLPH L. JANEGA and EDWIN J. BELZ, Assistant State's Attorneys, of counsel,) for the People.

Mr. JUSTICE HOUSE delivered the opinion of the court:

Stanley Polenisiak and Harold Domanski were indicted in the criminal court of Cook County for the unlawful possession of burglary tools. A jury found them guilty and the court sentenced each of them to the penitentiary for a term of not less than one year nor more than two years. Polenisiak prosecutes this writ of error alleging the People failed to prove him guilty beyond a reasonable doubt.

On March 16, 1960, at about 6:45 A.M., two police

officers stopped Polenisiak's car in the vicinity of Elston and Central avenues in Chicago because it did not have a 1960 city vehicle sticker. Domanski was driving and he did not have a driver's license. Both men had been drinking and there was a partly empty bottle of whiskey on the front seat. The officers noticed tools on the back floor of the car and asked the men about them. Polenisiak and Domanski got out of their car and were abusive in talk and action to the officers who called for additional help because they thought a fight might ensue or the men might try to escape. They were taken into custody and Domanski was booked for driving while under the influence of alcohol, driving without a driver's license, and failure to have a city vehicle sticker. Both were later charged with unlawful possession of burglary tools.

The tools found in the car were a wrecking bar, a rolling head bar, a screw driver, a key hole saw, and a filed-down feeler gauge.

The defendant testified that he and Domanski had been drinking until 5:00 A.M. and that they were going to the home of defendant's sister at 6311 West Devon when the police stopped them. He stated he worked at various times as an engraver, a truck driver, and a sheet metal worker; he named his various employers; and he explained that the tools were bought and used for sheet metal work. He denied that he ever used the tools for breaking into a building and denied that he possessed the tools with any intention of breaking into a building.

The defendant concedes that the tools introduced in evidence were his and that they could be used for breaking and entering a building. He argues, however, that there is nothing to show that he possessed the tools for that purpose.

The intent with which tools are possessed must ordinarily be proved by circumstantial evidence. Thus, in *People v. Faginkrantz*, 21 Ill.2d 75, we held that such an intent could be inferred from the fact that the defendant was il-

legally parked in an alley behind a plumbing supply firm at 4:30 A.M. with his motor and lights shut off, that he was far away from home, that the police testified that, although they looked, they were unable to substantiate his asserted reason for being there, and that he had in his possession tools adapted to breaking and entering. In *People* v. *Esposito*, 18 Ill.2d 104, we held such intent could be inferred from the facts that the defendant was driving a car far from home at 5:20 A.M. with no illumination on the rear license plate, that there were in the car a gun and black jack, a radio which could receive police calls, and tools which could be used for burglary and which were unnecessary for his employment or for the operation of the car, that he gave contradictory stories about who owned the tools, that his companion fled when the car was stopped, and that defendant refused to identify his companion. And, in *People* v. *Taranto*, 2 Ill.2d 476, we held such intent could be inferred from the fact that defendant was stopping on various floors of an apartment building where he had no business, that he falsely stated he lived there, that he had in his possession tools which could be used to pull locks, and that he tried to flee when questioned and resisted arrest. On the other hand, we held in *People* v. *Taylor*, 410 Ill. 469, that such intent was not proved beyond a reasonable doubt where defendant needed the tools he possessed for his work, he explained why he had the tools at the time and place where he was arrested, and he did not resist arrest, attempt to flee, or conceal his identity.

The uncontradicted testimony of defendant, his mother, and sister is to the effect that defendant was staying at the sister's house on March 16, 1960, and had been staying there for a period of 8 or 9 months, while the sister stayed at their parents' home because their father was ill. The sister's home is in the vicinity of where defendant was arrested—his usual residence is not. It is also uncontradicted that defendant used the tools while doing sheet metal work

for various contractors whom he named. The record does not indicate that defendant, who is 39 years of age, or his companion, who is 44 years of age, have any criminal record. (Cf. *People* v. *Taylor*, 410 Ill. 469.) While both defendant and his companion were abusive with their language and threatening in their actions, the record fails to show that they attempted to flee, resisted arrest, or concealed their identity.

The people attach significance to the testimony of the arresting officers that defendant did not tell them he was staying at his sister's home or that he had done sheet metal work. The defendant testified that he did tell this to the officers. Whether he told the officers or not, the fact remains that the testimony on these two matters was uncontradicted and was of such a nature that it could easily have been contradicted if it were not true.

We believe that the circumstances from which a general burglarious intent could be inferred are lacking in this case. (*People* v. *Taylor*, 410 Ill. 469.) The judgment of the criminal court of Cook County is accordingly reversed.

*Judgment reversed.*