THE PEOPLE OF THE STATE OF ILLINOIS, Plaintiff-Appellee, *v.* JAMES SPENCER, Defendant-Appellant.

(No. 55965; ▮▮▮▮▮▮)

First District (3rd Division)—February 15, 1973.

230

Gerald W. Getty, Public Defender, of Chicago, (Ronald P. Katz and James J. Doherty, Assistant Public Defenders, of counsel,) for appellant.

Bernard Carey, State's Attorney, of Chicago, (Elmer C. Kissane, Albert Rosendahl, and Mark Zubor, Assistant State's Attorneys, of counsel,) for the People.

Mr. JUSTICE McGLOON delivered the opinion of the court:

Defendant, James Spencer, was charged with burglary, attempt to commit burglary, and possession of burglary tools. At a bench trial, Spencer was found not guilty of burglary and attempt to commit burglary and was found guilty of possession of burglary tools. He was sentenced to the penitentiary for a term of not less than 18 nor more than 24 months. He appeals.

Spencer raises two points for our consideration. First, he contends that the evidence was insufficient to support the trial court's finding that he was guilty of possession of burglary tools. Second, he contends that his arrest and search of his person were without probable cause and violated his constitutional rights, and that the court committed reversible error in admitting physical evidence which was the fruit of this illegal search and seizure.

We reverse.

On January 11, 1971, at about 2:45 P.M. in response to a police radio communication alerting them to a male Negro wearing a long, gray overcoat, Chicago Police Officers Wayne Heimann and John McKenna spotted a person wearing a gray overcoat who was later identified at

trial as the defendant. The police officers, who were in civilian dress and an unmarked car, stopped their car approximately 100 to 150 feet behind the man and observed him walking westbound on 78th Street in Chicago until he got to the corner of 78th Street and Winchester Avenue. At this point the defendant started walking southbound on Winchester on the west side of the street. The police officers drove their car to the corner of 78th Street and Winchester so that they could observe the defendant walking down Winchester. The defendant reached the middle of the block when he crossed over to the east side of the street. Both officers saw him enter the building at 7837 South Winchester, and they drove their car up to that location. Officer Heimann saw the defendant go into the inner door of that building. The inner door and outer door of the building were separated by a small vestibule. Stairs led from the inner door up to two apartments, one on the first floor and one on the second floor.

After parking their car and making a broadcast, the two officers went to 7837 South Winchester and saw the defendant between the outer door and the inner door. Officer Heimann testified that at this time Spencer appeared to be hiding something under a rug or floor mat. Officer McKenna testified that Spencer reached down and put something under the doormat. At this point Spencer was detained, Officer Heimann picked up the doormat, and both officers observed a kitchen knife with approximately an 8 inch blade and a serrated edge. Spencer was placed under arrest, and two pocket knives were found on his person as the result of a search. Both knives were of the pull-out type, one with a blade from 4½ to 5 inches long, the other with a blade about 3 inches long. All three knives were identified by each police officer and admitted into evidence as people's exhibits. A further investigation of the premises revealed wet footprints on the stairs going up to the land on the first floor and coming down again. At the time of Spencer's arrest no one was at home in the building. Officer Heimann testified that there was no indication of forcible entry anywhere in the building.

Albert Nowicki, who owned the building and lived on the first floor with his wife and two young children, testified that on January 11, 1971, at 8:00 A.M. he left for work while his wife and children were still at home. As to whether the various doors in the building were locked or unlocked, Nowicki testified that the outer door was always unlocked, that the inner door was always locked and had to be pushed shut, and that the door to his apartment was always locked and had to be pulled shut. Upon leaving the building Nowicki testified that both his apartment door and the inner door were shut and locked. It was stipulated at trial that if Mrs. Shirley Nowicki were to testify, her testimony would show

that she left the building at about 10:00 A.M. and locked the door to her apartment. When she returned home Spencer had already been arrested.

Mr. Nowicki testified that when he left home that morning an accordian case which is usually kept on the first floor landing was closed. Mrs. Nowicki's stipulated testimony showed that when she left home that morning she also observed that the case was closed. Officer McKenna testified that upon investigation of the premises after Spencer's arrest, he observed an open suitcase on the first floor landing.

The defendant Spencer testified on his own behalf. On direct examination he stated that he went to 7837 South Winchester to find a friend. As to the knives, he denied owning the butcher knife and stated that he carried one of the pocket knives for protection and intended to give the other pocket knife to his nephew in the Navy. He denied using any of the knives to gain entrance to the building.

Spencer's testimony on cross-examination showed that he was looking for a man named Emil Wells who had promised him a job but whose address he did not know. After inquiring in the neighborhood as to the whereabouts of Wells, Spencer was directed to the middle of Winchester Avenue between 78th Street and 79th Street. Spencer did not see Wells's name on the mailbox at 7837 South Winchester and received no answer when he rang the bell for the first floor apartment. He further testified that the inner door of the vestibule was ajar, that he entered, and that when he received no answer to his knocking on the door of the first floor apartment, he returned to the point where he was arrested. He denied putting the kitchen knife under the doormat. As to the accordian case, he denied opening it.

At the close of the State's case, the court granted defendant's motion for a directed verdict of not guilty as to the burglary count and the attempt to commit burglary count, and denied the motion for a directed verdict as to the possession of burglary tools count.

The defendant contends that the evidence was insufficient to support a finding that he was guilty of possession of burglary tools. The statute provides in pertinent part: "Whoever possesses any key, tool, instrument, device, * * * suitable for use in breaking into a building, * * * or any part thereof, with intent to enter such place and with intent to commit therein a felony or theft shall be imprisoned * * *." Ill. Rev. Stat. 1969, ch. 38, sec. 19—2.

■■ In order to sustain a conviction pursuant to this statute the prosecution must prove: "(1) that the tools are adapted and designed for breaking and entering; (2) that the defendant possessed them with knowledge of their character; and (3) that he intended to use them for breaking

and entering." *People v. Faginkrantz* (1960), 21 Ill.2d 75, 79, 171 N.E.2d 5, 7.

██ The defendant argues that he did not have possession of burglary tools at the time of his arrest. He argues further that the kitchen knife found under the vestibule floormat was not in his possession even under the doctrine of constructive possession. Addressing ourselves first to the issue of constructive possession, we find that the case of *People v. Richardson* (1961), 21 Ill.2d 435, 172 N.E.2d 801, is controlling. In that case a conviction for possession of narcotics was sustained by the testimony of a police officer that he saw the defendant make a motion as if he were throwing something to the ground, and that he found a package of heroin a few feet from where the defendant was standing. It was thought that the defendant threw away the package when he suspected that the police were approaching. In the instant case one police officer saw Spencer put something under the floormat, and the other testified that Spencer appeared to be hiding something under the floormat from under which the knife was immediately retrieved.

██ But even though we decide that the defendant did have the three knives in his possession, whether actual or constructive, he argues that the prosecution failed to prove he intended to use them for a criminal purpose. (*People v. Taranto* (1954), 2 Ill.2d 476, 119 N.E.2d 221.) The three knives were not altered in any way to suggest that Spencer had intended to use them for breaking and entering. When on its face it can be said that the knives could be used as easily for an innocent purpose as for an illegal purpose, the question of intent must be the controlling factor in establishing the defendant's guilt or innocence. (*People v. Taylor* (1951), 410 Ill. 469, 102 N.E.2d 529.) Therefore, we must examine the record to see if the evidence justifies a finding that the defendant possessed the knives with an intent to use them feloniously. Because this is a case in which criminal intent must of necessity be shown by circumstantial evidence (*People v. Archie* (1969), 105 Ill.App.2d 211, 245 N.E.2d 59), we are guided in our determination by an examination of other decisions in which the presence or absence of the criminal intent element of the offense of possession of burglary tools was inferred from the circumstances surrounding the possession of the tools.

The prosecution cites *People v. Faginkrantz* (1960), 21 Ill.2d 75, 171 N.E.2d 5; *People v. Esposito* (1959), 18 Ill.2d 104, 163 N.E.2d 487; and *People v. Taranto* (1954), 2 Ill.2d 476, 119 N.E.2d 221, as instances where the court found a criminal intent and affirmed convictions for possession of burglary tools. The relevant facts of each case that the court found persuasive in reaching its decisions are stated in *People v. Polenisiak* (1962), 26 Ill.2d 317, 186 N.E.2d 271. The defendant relies on

*People v. Taylor* (1951), 410 Ill. 469, 102 N.E.2d 529, and *People v. Polenisiak, supra,* in which convictions for possession of burglary tools were reversed when the court could not find that the prosecution had proved the element of intent beyond a reasonable doubt. In both *Taylor* and *Polenisiak* the defendants had explanations as to why they had the tools at the time and place of arrest, and further they did not resist arrest, attempt to flee, or conceal their identities.

Spencer's explanation as to why he was in the vicinity of 7837 South Winchester Avenue was uncontradicted. As to his being able to gain entry to the stairs in the building through the inner door which was ajar, there was no testimony that this door was locked at the time he entered the building. In fact, Mr. Nowicki testified that the inner vestibule door had to be pushed shut in order to lock it. The stipulated testimony of Mrs. Nowicki showed that she left the building in the morning after her husband, but it did not reveal whether the inner vestibule door was shut and locked at that time. There was no indication of forcible entry anywhere in the building to suggest that Spencer entered other than by a door which was ajar. Spencer explained his possession of the two pocket knives. One was for his personal protection; the other he intended to give to his nephew in the Navy. There was no attempt on the part of the defendant to resist arrest, flee or conceal his identity.

■■ We find that the evidence in this case was insufficient to prove that Spencer had the criminal intent required by the statute defining the offense. The conflict between the evidence presented by the prosecution and the uncontradicted testimony of the defendant raises a reasonable doubt which requires reversal. The cause will not be remanded for a new trial inasmuch as it does not appear that the prosecution has any further evidence to produce. (*People v. Sheppard* (1949), 402 Ill. 347, 83 N.E.2d 587.) Because we have decided to reverse on these grounds, we feel it is unnecessary to decide the issue of whether probable cause existed for the defendant's arrest.

Accordingly, the judgment of the circuit court of Cook County is reversed.

Judgment reversed.

DEMPSEY, P. J., and McNAMARA, J., concur.