HANSEN, Plaintiff in error, v. STATE, Defendant in error.*

No. State 172.  Submitted under sec. (Rule) 251.54 June 5, 1974.—
Decided June 28, 1974.
(Also reported in 219 N. W. 2d 246.)

* Motion for rehearing denied, without costs, on September 4,
1974.

542

The cause was submitted for the plaintiff in error on the brief of *Schwemer & Schwemer* of Milwaukee, and for the defendant in error on the brief of *Robert W. Warren,* attorney general, and *Christine M. Wiseman,* assistant attorney general.

WILKIE, J. Five issues are presented on this review:

1. Is the evidence sufficient to support the conviction?

2. Did the court err in its handling of defense witnesses?

3. Was the closing argument of the prosecutor prejudicial?

4. Should a new trial be granted in the interest of justice?

5. Should the sentence be modified?

### Sufficiency of the evidence.

To convict a person of violation of sec. 943.12, Stats.,[1] three elements must be proven: (1) Possession of any device or instrumentality designed and adapted for use in breaking into any depository for the safekeeping of any valuables or into any building or room; (2) with intent to use such device to break into any of the above; (3) with intent to steal therefrom. Each of these elements must be proven beyond a reasonable doubt.[2] However, circumstantial evidence can be sufficient to establish the requisite degree of certitude.[3] This is especially true with respect to establishing elements requiring proof of intent. It has been recognized by this court that:

" 'Intent is a state of mind existing at the time a person commits an offense. If intent required definite and substantive proof, it would be almost impossible to convict, absent facts disclosing a culmination of the intent. The mind of an alleged offender, however, may be read from his acts, conduct, and inferences fairly deducible from all the circumstances.' . . ."[4]

The state correctly contends that there are circumstances here in addition to mere possession of a crowbar,

[1] Sec. 943.12, Stats. "Possession of burglarious tools. Whoever has in his possession any device or instrumentality designed and adapted for use in breaking into any depository designed for the safekeeping of any valuables or into any building or room, with intent to use such device or instrumentality to break into a depository, building or room, and to steal therefrom, may be fined not more than $1,000 or imprisoned not more than 10 years or both."

[2] *State ex rel. Tessler v. Kubiak* (1950), 257 Wis. 159, 42 N. W. 2d 496.

[3] *Bautista v. State* (1971), 53 Wis. 2d 218, 223, 191 N. W. 2d 725.

[4] *Strait v. State* (1969), 41 Wis. 2d 552, 559, 164 N. W. 2d 505; *Sartin v. State* (1969), 44 Wis. 2d 138, 170 N. W. 2d 727; *Jacobs v. State* (1971), 50 Wis. 2d 361, 365, 366, 184 N. W. 2d 113; *Gibson v. State* (1972), 55 Wis. 2d 110, 113, 197 N. W. 2d 813.

gloves and socks, from which a jury could reasonably infer that they were possessed with an intent to steal. The defendant would have us believe he was arrested and charged with possession of burglarious tools for merely walking down a public sidewalk while carrying a crowbar. In fact, several witnesses testified that he twice visited a vacant home at approximately 9:30 p. m. This home on 71st Street was dark except for a small light in the back of the house. After the first visit the defendant and a companion drove away and within a few minutes returned on foot and went to the front door of the home again. Finding no one home the two men walked to the end of the block and turned the corner. Suspicious neighbors had called the police and a patrol car sighted the two men walking down 72nd Street. The defendant was observed to be carrying an object which at first appeared to be a cane. As the patrol car came opposite the two men, the officer testified, the defendant began to trot or walk rapidly up the driveway of a home whose lot directly adjoined the lot of the home on 71st Street which the men had earlier visited. The officer turned his spotlight on the defendant. He testified that at that moment the defendant threw a crowbar and a brown object toward the back of the house. A crowbar and a pair of brown gloves were later recovered where the defendant had thrown them. During questioning by the officer the defendant dropped a pair of socks and attempted to step on them. Although the defendant told the officer he was looking for the home of a woman acquaintance, when questioned further he remarked: "Well, you got to make a living."

From these circumstances it is clear that a jury could have found all the elements necessary to a conviction of possession of burglarious tools beyond a reasonable doubt. Although at the trial the defendant explained that he was in the neighborhood looking for the home of Rose

Fallier, this court has held in *Fox v. State* [5] that the weakness of the explanation given by the defendant could be considered in evaluating circumstantial evidence in a burglary case. This court held that a trial court could consider "that an ordinary citizen does not normally go visiting equipped with a pinholed flashlight, one cotton glove, one leather glove and an empty pillowcase." [6] So in this case it is implausible that the defendant would be looking for the home of an acquaintance in order to pick up some artwork while carrying a crowbar, a pair of gloves and a pair of socks.

The defendant also argues from an analysis of cases where burglary is charged that proof of some overt act by the defendant necessary to accomplish a breaking and entering is needed before proof of intent to use burglarious tools for breaking and entering will be found. As the state points out in its brief, this would make possession of burglarious tools merely a lesser included crime of attempted burglary. It appears that the defendant maintains that he must be caught in the act of using the tools to gain entry to a specific location. However, in the early case of *Scott v. State* [7] this court stated, in regard to the charge of possession of burglarious tools:

". . . In *Comm. v. Tivnon*, 8 Gray, 375, 380, under a statute the same in terms as the present, it was held that 'the general intent was sufficient, and it was not necessary to allege or prove any intent to use the tools in a particular place, or for a particular purpose, or in any definite manner.' From the very nature of the offense it would, in general, be impossible to allege or show an intent to deprive any particular owner of his property. . . ."

Since only a general intent is necessary for commission of the crime of possession of burglarious tools, it can hardly

---

[5] (1973), 60 Wis. 2d 462, 210 N. W. 2d 722.

[6] *Id.* at page 469.

[7] (1895), 91 Wis. 552, 555, 556, 65 N. W. 61.

be held that actual overt acts toward breaking and entering into a particular building must be proved before the requisite intent to so use the tools can be found.

### Defense witnesses.

The defendant cites as error "the court's handling of the Rose Fallier testimony and its failure to grant a continuance for Peterman." However, a careful review of the record fails to reveal any error. At the time of the trial Rose Fallier was hospitalized. Before taking the jury to the hospital to hear the testimony of this witness for the defense, the trial judge suggested that the district attorney speak to Rose Fallier on the telephone to confirm that she would testify as the defendant related to the court. This telephone conversation was recorded and revealed that Rose Fallier was hostile to the defendant and that her testimony would probably damage rather than help his defense.

The defendant in this case sought and was given permission to defend himself pro se. However, the court did appoint an attorney to advise him during the trial. In this situation it would not appear to be error to have asked the defendant to decide whether he wished to have Rose Fallier testify before the jury. It was the defendant's decision that he would dispense with her testimony.

The defendant on appeal seems to contend that the defendant was persuaded to forgo an essential witness by the "persuasion" of the trial judge and district attorney. However, the record reveals that the trial judge was merely insisting that the defendant make a decision on whether to take this witness's testimony. The defendant chose to represent himself and must take the responsibility for such decision. The record does not reveal that the district attorney or the judge took advantage of the defendant's unfamiliarity with the law or unduly influenced him to forgo essential defense testi-

mony. The attorney who had been appointed to assist the defendant did not dispute the wisdom of the defendant's choice. The trial court was not in error in allowing the defendant to make his decision.

The defendant also complains that the court did not grant a continuance to obtain the testimony of Roger Peterman. However, there was no request made for a continuance. The defendant apparently contends that the trial court should have granted a continuance sua sponte.

The Seventh Circuit Court of Appeals, in a case involving questions of adverse pretrial publicity, said:

"Regarding the denial of a continuance, it must be noted that the continuance was requested on other grounds which are not contested on this appeal. If counsel believed that the publicity was dissipated sufficiently by the time of trial so that a *voir dire* examination could weed out any undesirable jurors, the court should not, except in the most extreme circumstances, be expected to raise the issue of a continuance *sua sponte*. . . . However, while we do not believe that justice should take a role secondary to the adversary process of criminal law, we cannot hold that a trial judge is required to raise all questions concerning the necessity for protective measures. Therefore, as here, in the absence of unusual circumstances, motions for such measures as petitioner advocates in the case at bar must be made by the defendant or his counsel." [8]

And this court in *Whitty v. State* [9] explained that it does not look with favor on claims of prejudicial error based upon the trial court's failure to act when no request for such action was made. "The primary duty of trying a lawsuit is upon trial counsel, not the trial judge." [10]

---

[8] *Margoles v. United States* (7th Cir. 1969), 407 Fed. 2d 727, 731, 732.

[9] (1967), 34 Wis. 2d 278, 149 N. W. 2d 557.

[10] *Id.* at page 290. *See also: Hebel v. State* (1973), 60 Wis. 2d 325, 333, 210 N. W. 2d 695. "Trial counsel cannot sit back at trial and wait for the trial judge to make errors of omission."

In *Elam v. State* [11] this court discussed the question of continuances to obtain the testimony of defense witnesses.

"... Since the primary responsibility for having witnesses present in court rests with the parties and not the court, the rule is that a motion for a continuance to obtain the attendance of witnesses is addressed to the discretion of the trial court ....
". . . Generally, the court may consider whether the testimony of the absent witness is material, whether the moving party has been guilty of any neglect in endeavoring to procure the attendance of the witness, and whether there is a reasonable expectation that the witness can be located."

It would not appear from the record that it would have been an abuse of discretion for the trial court to have denied a continuance in this case if one had been requested. The record reveals that the subpoena for Peterman was not issued until the day of the trial. The sheriff was unable to locate Peterman at his home at 11:30 a. m. that day. This court has held that the attempted service of a subpoena on the day before trial did not show due diligence. [12] Also the record reveals no way for the trial court to know that the witness could be located. [13]

### *Remarks of district attorney.*

The defendant also contends that the state's closing argument was prejudicial. The defendant asserts that in her closing argument the district attorney commented that not even the defendant's witness, Roger Peterman, would testify on his behalf. The defendant asserts this was grossly unfair in view of his attempt to subpoena Roger Peterman. However, the record does not reveal

[11] (1971), 50 Wis. 2d 383, 389, 390, 184 N. W. 2d 176.

[12] *Elam v. State, supra,* footnote 11.

[13] *Buckner v. State* (1972), 56 Wis. 2d 539, 202 N. W. 2d 406.

an objection to this statement or a motion for a mistrial based on the remark. This court has frequently held that these are the prerequisites to a review on appeal of claimed prejudicial closing arguments.[14]

### Modification of sentence.

The defendant argues in his brief that the statement of the court made before pronouncing sentence was insufficient and did not meet the requirement of explanation set forth in *McCleary v. State*.[15] After the verdict was returned, the court elicited from the defendant the facts that he was fifty-six years old and had spent twenty years of his adult life in prison. He had been out of prison only nineteen months before the present arrest. The court ordered a presentence investigation and adjourned the sentencing for thirty days.

At the sentencing hearing the state concurred in the presentence report and counsel for the defendant had nothing to add. The court stated:

"Mr. Hansen, you have had numerous opportunities to rehabilitate yourself as indications are made by the presentence report. You have had a long history of crime. I note, however, that none of them have any element of violence involved."

The court thereupon sentenced the defendant to a term of not more than three years at Waupun. The maximum possible sentence for the crime of possession of burglarious tools is ten years. Although the explanation of the court could have been more detailed, it meets the basic requirement of *McCleary* that the court state the facts on which it predicates its judgment and give the reasons

[14] *Price v. State* (1967), 37 Wis. 2d 117, 154 N. W. 2d 222; *State v. Ruud* (1969), 41 Wis. 2d 720, 165 N. W. 2d 153; *Jandrt v. State* (1969), 43 Wis. 2d 497, 168 N. W. 2d 602; *Wright v. State* (1970), 46 Wis. 2d 75, 175 N. W. 2d 646.

[15] (1971), 49 Wis. 2d 263, 182 N. W. 2d 512.

for its judgment. We have no hesitancy in concluding that the trial court exercised proper discretion and the sentence imposed was the product of that discretion.

### Interest of justice.

There is no showing here that a probable miscarriage of justice resulted from the failure of Rose Fallier or Roger Peterman to testify, or otherwise, and we therefore conclude not to order a new trial in the interest of justice under our discretionary reversal power, as provided under sec. 251.09, Stats.

*By the Court.*—Judgment and order affirmed.