THE PEOPLE OF THE STATE OF ILLINOIS, Plaintiff-Appellee, *v.*
WILLIAM BIBBS *et al.*, Defendants-Appellants.

Second District   No. 77-173

Opinion filed June 13, 1978.

GUILD, J., dissenting.

Mary Robinson and Daniel Cummings, both of State Appellate Defender's Office, of Elgin, for appellants.

F. Michael Fitzsimmons, State's Attorney, of Wheaton (Malcolm F. Smith, Assistant State's Attorney, of counsel), for the People.

Mr. JUSTICE NASH delivered the opinion of the court:

William Bibbs and Floyd Small, defendants, were convicted of possession of burglary tools after a joint bench trial and each was sentenced to a term of one to three years imprisonment. They appeal, contending the State did not prove beyond a reasonable doubt that they possessed the tools with the requisite felonious intent.

Officer Mark Delise of the Oak Brook police department testified he was off duty on July 25, 1975, and at about 11:15 a.m. he observed defendants in an aisle of the Oak Brook Shopping Center parking lot. Bibbs was behind the wheel of his car with its engine running and parked next to a brown Pontiac LeMans; Small was standing next to the Pontiac, pulled on its door handle, looked around and got into Bibbs' car. Delise stated he was approximately 25 yards from defendants in his own car and his view was not obstructed in any way. Delise testified further that Bibbs and Small then drove to a portion of the parking lot west of the Marshall Field's store and stopped in the middle of an aisle; Delise followed them

in his own car and observed Small get out and approach a vehicle, look in the window, then return to Bibbs' car. Defendants next drove closer to Marshall Field's and Small went inside. Delise then went to a nearby phone, called Oak Brook police and continued to observe defendants. After about 10 minutes Small came out of the store and defendants drove back to the brown LeMans again parking in the space next to it. Small approached the LeMans, put his hand on it, looked left and right, then quickly returned to Bibbs' car and they drove away. Delise testified they drove at a high rate of speed with tires squealing. He followed and radioed to officers in nearby marked squad cars who stopped defendants' vehicle at 16th Street and Spring Road near the shopping center.

Officer Delise approached the vehicle and observed a slamhammer, a long-neck screwdriver and a roll of clear plastic tape on the floor of the back seat of the car. After defendants were placed under arrest, police searched the car further and found two screwdrivers, a pair of long-neck pliers and an ignition lock with a key in it in the glove compartment and found a paper bag containing two metal screws on the rear floor. Two metal screws were also found in defendant Small's right front pocket.

Delise testified at trial he saw no unusual or furtive activity in the car as he followed it from the parking lot prior to it being stopped and defendants did not look back as they drove away. Delise also testified that the articles found in defendants' car were tools suitable for breaking into motor vehicles. The slamhammer, a tool ordinarily used by body shops to remove dents, could also be used to pull locks or ignitions. The long-neck screwdriver could be used between a car window and its edging to lift the lock; and the thicker screwdrivers and the pliers could be used to pop open vent windows.

Before the grand jury Delise testified only that Small looked in the LeMans, walked around it and looked in the other side, and, at the preliminary hearing, Delise first testified that both defendants were standing next to the LeMans when he first observed them—then corrected his testimony on further questioning.

Defendant Bibbs testified he was employed by Chuck's Body and Fender Shop in Chicago and had worked there on a part-time basis for a year and a half. He stated that the slamhammer belonged to the shop and he had borrowed it the day before, a Friday, to remove a dent from the trunk of his wife's car which he was driving at the time of his arrest. He further testified that he and Small both lived in Chicago and were shopping at Oak Brook. He said the slamhammer was in the trunk of the car and the other tools were locked in the glove compartment. Bibbs denied that either defendant approached any car in the lot and said they left the shopping center after Small made a phone call to his wife from Marshall Field's while Bibbs waited for him in the car.

Eddie Campbell, a partner in Chuck's Body Shop, testified that Bibbs worked part-time for them fixing dents and sanding down cars. Campbell verified that Bibbs, whose wife drove him to work and picked him up, sometimes took tools home and that the day before his arrest had taken the slamhammer to fix a dent in the trunk of his wife's car.

Delise and another police officer testified in rebuttal that they did not observe any dents in the trunk of Bibbs' car on July 25.

Defendants' sole contention on appeal is that the State failed to prove beyond a reasonable doubt that defendants possessed the tools with a felonious intent. Section 19—2 of the Criminal Code of 1961 (Ill. Rev. Stat. 1973, ch. 38, par. 19—2) provides in part as follows:

"(a) A person commits the offense of possession of burglary tools when he possesses any key, tool, instrument, device, or any explosive, suitable for use in breaking into a * * * motor vehicle * * *, with intent to enter any such place and with intent to commit therein a felony or theft."

■■ To sustain a conviction for possession of burglary tools the State must prove "that the defendant possessed tools adapted and designed for breaking and entering and that they were possessed with knowledge of their character and with the intent to commit a felony or theft." (*People v. Watson* (1974), 24 Ill. App. 3d 237, 239, 321 N.E.2d 187, 189; *People v. Faginkrantz* (1960), 21 Ill. 2d 75, 171 N.E.2d 5.) Defendants do not deny they possessed the tools or that they were aware such tools could be used to burglarize a vehicle, but contend only that the State failed to prove they intended to use the tools for that purpose.

The intent with which tools suitable for the commission of a burglary are possessed must ordinarily be proved by circumstantial evidence. (*People v. Polenisiak* (1962), 26 Ill. 2d 317, 318, 186 N.E.2d 271, 272.) In *People v. Faginkrantz* (1960), 21 Ill. 2d 75, 171 N.E.2d 5, the defendant was arrested near his car parked behind a plumbing supply company at 4:30 a.m. Because there had been burglaries in the area police asked if they could search his car and in the trunk found tools suitable for the commission of a burglary. In *Faginkrantz*, as in the case at bar, an employer verified that the tools were used in defendant's employment. The court found that the fact defendant was in the alley at that hour for an unsubstantiated reason, far from home and in the possession of burglary tools was sufficient to sustain a finding of criminal intent. In *People v. Taylor* (1951), 410 Ill. 469, 102 N.E.2d 529, the court found insufficient evidence that defendant, who was carrying tools suitable for the commission of a burglary, but contended he worked as a handyman and was on his way home when stopped by police, had a felonious intent to use the tools. The defendant in *Taylor* made no effort to secrete the tools nor did he resist arrest or attempt to flee. The court in *People v. Polenisiak*

(1962), 26 Ill. 2d 317, 186 N.E.2d 271, found that a felonious intent coupled with possession of tools had not been shown where the defendant, a sheet metal worker, was stopped for a traffic offense and was abusive to officers but did not attempt to flee. The defendant in *People v. Watson* (1974), 24 Ill. App. 3d 237, 321 N.E.2d 187, on the other hand, was observed parked in a closed service station at 1:30 a.m. and fled at a high rate of speed as police approached. A man in the back seat of defendant's car was observed behaving in a furtive manner. The court found in *Watson* sufficient evidence upon which to base a finding that defendant possessed certain tools with a felonious intent. Similarly in *People v. Janis* (1977), 56 Ill. App. 3d 160, 371 N.E.2d 1063, where defendant was stopped in a van behind a drug store at 1:30 a.m. shortly after a burglar alarm had been activated, the court found sufficient evidence from which to infer that a criminal intent attached to the tools in defendant's possession.

■■ In the instant case defendants were seen in a large shopping center parking lot during ordinary business hours on a Saturday morning either looking at or trying the door of a car. Although the tools found in their vehicle could be used to break into cars, the possession of the tools was adequately explained by defendant Bibbs and his employer. There is no evidence defendants saw Delise or any other police officer and attempted to leave the parking area for that reason and Delise did not observe any furtive activity in the car as he followed it from the shopping center. We find the evidence adduced at trial in this case is insufficient to establish that defendants had in their possession the described tools with the requisite felonious intent under these circumstances.

The judgment of the Circuit Court of Du Page County must, therefore, be reversed.

Reversed.

RECHENMACHER, J., concurs.

Mr. JUSTICE GUILD, dissenting:
I dissent.
The majority have cited several cases where the defendant was apprehended in the possession of burglary tools during the night time. The majority points out that the defendants were seen in the large shopping center parking lot at Oak Brook during business hours. I do not think that we have to divorce ourselves from reality. The thefts of motor vehicles from large shopping center parking lots are committed during shopping hours, both in the daytime and at night when the cars are available for theft.

There is no question but that defendant Small "cased" the brown Pontiac LeMans in question here. According to the testimony of Officer Delise, who was conducting a surveillance of the lot from an unmarked car, the defendant Small twice tried the door handle of the Pontiac. The defendants then drove off, stopped and looked into another auto and shortly thereafter they returned to the Pontiac and Small again tried the door. The defendants then abruptly drove off "with tires squealing" and were apprehended by uniformed officers a short distance from the parking lot. In the back seat of the defendants' car a "slam hammer" (a device for the removal of auto locks or dents), a long-neck screw driver and a roll of clear plastic tape were observed by all of the arresting officers. It is common knowledge that a slam hammer is a common tool used in the theft of motor vehicles.

I believe that *People v. Faginkrantz* (1960), 21 Ill. 2d 75, 171 N.E.2d 5, is controlling in this case. In *Faginkrantz* the defendant had in his possession tools originally designed for lawful purposes but adapted for breaking and entering. The defendant's employer testified that he operated a car repair shop and that he had permitted Faginkrantz to borrow the tools for repair to his own cars. *Faginkrantz* was a bench trial. In answering defendant's contention that the State had failed to prove that he intended to use the burglary tools for breaking and entering, the supreme court stated:

> "In the absence of a confession, the requisite intent must ordinarily be proved by circumstantial evidence. [Citation.] Since a jury was waived, it was for the trial court to determine the credibility of the witnesses and the inferences to be drawn from the testimony." 21 Ill. 2d 75, 80, 171 N.E.2d 5, 8.

In the case before us, which was also a bench trial, the defendants lived on the far south side of Chicago, many miles through heavy traffic from the Oak Brook Shopping Center. Yet their testimony was that they had gone "shopping" on the morning in question. As in *Faginkrantz*, the defendants had in their possession tools adaptable to breaking into and entering motor vehicles. Also, the defendants' quite unusual actions in the lot were unexplained. We should not substitute our opinion for that of the trial court under the facts of this case. The evidence here is every bit as strong and conclusive as it was in *Faginkrantz*—the defendants twice trying the door of the Pontiac, their apparent hasty retreat or flight, and the subsequent observation of the burglary tools adaptable for breaking into automobiles in the defendants' car, is more than enough to justify the trial court's decision. Nor am I impressed by the testimony of the employer that he had loaned the tools in question to the defendant Bibbs for the purpose of repairing his wife's car. Similar testimony was considered by the court in *Faginkrantz* and found wanting.

I would affirm.