373 So.2d 451 (1979)
Adam E. PRESTON, Appellant,
v.
STATE of Florida, Appellee.
No. 78-1888.
District of Appeal of Florida, Second District.
August 1, 1979.
*452 Robert M. Focht, New Port Richey, for appellant.
Jim Smith, Atty. Gen., Tallahassee, and James Purdy, Asst. Atty. Gen., Tampa, for appellee.
DANAHY, Judge.
Thirty-one years ago an ice pick was judicially described as a tool of ordinary or everyday use, the possession of which could not properly give rise to a presumption of an intent to use it unlawfully.[1] We are confronted with the question whether an ice pick should be so regarded today, and, if so, whether the innocent character of an ice pick changes to criminal when it is carried in a combination consisting of two ice picks, a knife, a screwdriver, a flashlight, and a pair of socks. For possession of these items, appellant was found guilty of possessing burglary tools in violation of Section 810.06, Florida Statutes (1977), notwithstanding the absence of any evidence that appellant had used the items to commit a burglary. We reverse.
Appellant pled nolo contendere, reserving the right to appellate review by this court of the denial of appellant's motion to dismiss under Fla.R.Crim.P. 3.190(c)(4). The motion asserted that there were no material disputed facts and that the undisputed facts did not establish a prima facie case of guilt against appellant. As required by the rule, the motion set forth the facts upon which it was based. The state filed a demurrer stating additional undisputed facts. Thus the question reserved for review by this court is a question of law which is dispositive of the case and the appeal is permissible. Brown v. State, No. 53,782 (Fla. June 14, 1979); State v. Ashby, 245 So.2d 225 (Fla. 1971); Fla.R.App.P. 9.140(b).
The crime of possessing burglary tools is described in Section 810.06 as the possession of a tool, machine, or implement with the intent to use the same or allow the same to be used to commit a burglary or trespass. Appellant asserts that the state's case against him was deficient with respect to the element of intent. Our review of the denial of appellant's Rule 3.190(c)(4) motion requires us to determine whether the undisputed facts raised a jury question as to the issue of intent or, put another way, whether a jury could have concluded from the undisputed facts that appellant possessed the items in question with the intent to use them or allow them to be used to commit a burglary or trespass. Ellis v. State, 346 So.2d 1044 (Fla. 1st DCA 1977). We hold that a jury could not have found the requisite unlawful intent.
Appellant was spotted by law enforcement officers between 2:00 and 3:00 o'clock a.m. crouching behind a bush. He fled when he observed the officers approaching, and the officers gave chase.
In pursuit, the officers saw appellant step behind a tree some distance away. When they approached, appellant stepped out from behind the tree. The officers saw appellant drop something behind the tree which turned out to be a sock containing two ice picks, a knife, a screwdriver, and a flashlight. In the ensuing interview, appellant admitted to "night prowling" and said that he had been urinating behind the tree. The officers found no evidence of that activity. Further, the officers observed that appellant quickly wiped white paint from *453 his knees when the presence of the paint was brought to his attention.
In the neighborhood in which appellant was apprehended, on the night in question, no burglaries or attempted burglaries were reported or known to have taken place.
Relying on Foster v. State, 286 So.2d 549 (Fla. 1973) and Crosby v. State, 352 So.2d 1247 (Fla. 2d DCA 1977), appellant argues that, since the items in his possession were common household tools, they could not be considered burglary tools in the absence of evidence that any of the items were in fact used as burglary tools. Appellant argues that, therefore, the undisputed facts did not establish a prima facie case against him.
In response, the state takes the position that an intent to use tools or implements to commit a burglary can be found from the circumstances surrounding their possession. The state argues that the surrounding circumstances in this case are sufficient to support a jury determination that appellant possessed the items in question with the intent to use them to commit a burglary.
The trial judge was of the opinion that even if the items possessed by appellant could each be placed in the class of common household tools, the possession of them in combination rendered them burglary tools so that the rule in the Foster case does not apply. The state does not make that argument here. Instead, the state relies on the argument that Foster v. State, supra, and Crosby v. State, supra, do not apply because of a change in the wording of Section 810.06.
As the state correctly points out, at the time of the decision in the Foster case, Section 810.06 made it a crime to be in possession of a tool "adapted and designed" for cutting through, forcing or breaking open a building or a depository such as a safe in order to steal therefrom, with intent to use the tool for that purpose. The court in the Foster case emphasized the words "adapted and designed" and "intent to use" in holding that one cannot be convicted of possession of a burglary tool, when that tool is nothing more than a common household tool (a single screwdriver in the Foster case), without the use of such a tool as a burglary tool. In Crosby v. State, supra, this court held that two coathangers in a car were "common household tools" within the meaning of Foster, so that a conviction of possessing the coathangers as burglary tools could not be sustained in the absence of evidence that they were in fact used as a burglary tool.
The state points out that subsequent to the decision in the Foster case, Section 810.06 was amended to eliminate the words "adapted and designed" in describing what is a burglary tool within the meaning of that section. The state argues that this court failed to perceive the fact that the statute had been amended when it relied on Foster in making its decision in Crosby.
We do not agree with the state that the change in the wording of Section 810.06 nullified the rule announced in the Foster case. We believe the legislature simply eliminated some unnecessary verbiage. It has been generally held that a tool is adapted and designed for a burglarious use if it is suitable for such a use and it is wholly immaterial that the tool might have been originally designed and adapted for honest and lawful uses. People v. Taylor, 410 Ill. 469, 102 N.E.2d 529 (1951). Thus the screwdriver considered by the court in the Foster case met the requirement of being adapted and designed for use as a burglary tool.
Section 810.06 required prior to its amendment, as it does now, not only the possession of a tool suitable (adapted and designed) for use as a burglary tool, but possession with intent to use the tool as a burglary tool. We believe the rule expressed in the Foster case is that such an intent, where the tool is a common household item, can only be found from evidence that the item was in fact used as a burglary tool. The court in Foster observed that a conviction without such evidence would amount to criminalizing the mere possession of a simple household tool.
*454 Our conclusion that the rule in the Foster case remains valid despite the change in the wording of the statute is supported by our examination of cases in Florida and elsewhere dealing with convictions for possession of burglary tools. Although the rule is generally stated elsewhere to be that an intent to use an item as a burglary tool can be found from surrounding circumstances in the absence of evidence of actual use of the item to commit a burglary, we have found no case in which the surrounding circumstances have been found sufficient to show an unlawful intent when the items in question were considered by the court to be common household tools, or tools of ordinary or everyday use.
For example, the surrounding circumstances were held not sufficient to show an unlawful intent in Biggs v. State, 329 So.2d 415 (Fla. 4th DCA 1976) (gloves, screwdrivers, knife, pliers, tin cutters, and large bolt cutters carried in an automobile); People v. Taylor, supra, (pliers, screwdriver, and pencil flashlight); People v. Spencer, 10 Ill. App.3d 229, 294 N.E.2d 17 (1973) (kitchen knife and two pocket knives); Pamphlet v. State, 271 So.2d 403 (Miss. 1972) (crowbar, brace and bit, keyhold saw, large screwdriver, longhandle hatchet, and pair of pliers carried in an automobile); State v. Hansen, 545 S.W.2d 713 (Mo. App. 1977) (penlight flashlight, two pocketknives, and a drawstring cloth sack). In each of these cases the circumstances surrounding the possession of the items were suspicious, in some cases very much so. Nevertheless, the courts found that the circumstances were not sufficient to support a finding of burglarious intent.
The same results have been reached with respect to items not common or ordinary but for which the defendant had an innocent explanation. Again, the surrounding circumstances, though suspicious, were considered insufficient to show unlawful intent. See, for example, Burnette v. State, 258 So.2d 470 (Fla. 3d DCA 1972) (borrowed vending machine keys); People v. Polenisiak, 26 Ill.2d 317, 186 N.E.2d 271 (1962) (sheetmetal worker's tools); People v. Bibbs, 60 Ill. App.3d 878, 18 Ill.Dec. 270, 377 N.E.2d 559 (1978) (automobile repairman's tools); Commonwealth v. Gendrachi, 256 Pa.Super. 68, 389 A.2d 604 (1978) (locksmith's tools).
On the other hand, in cases in which surrounding circumstances were held sufficient to show unlawful intent, the items in question were not of an innocent character. See, for example, Troise v. State, 177 So.2d 24 (Fla. 3d DCA 1965) (keys to coin operated machines); People v. Faginkrantz, 21 Ill.2d 75, 171 N.E.2d 5 (1960) (cutting torch, oxygen tanks, air gauge, acetylene gauge, ax, hacksaw, and sledge hammer carried in an automobile); People v. Watson, 24 Ill. App.3d 237, 321 N.E.2d 187 (1974) (two pairs of pliers, prybar, flashlight, bolt cutter, wire cutter, tin snips, screwdriver, flashlight, two lugwrenches, ax, and ballpeen hammer carried in automobile); Hansen v. State, 64 Wis.2d 541, 219 N.W.2d 246 (1974) (crowbar carried on the street); Kessler v. State, 355 N.E.2d 262 (Ind. App. 1976) (sledgehammer, screwdriver, and prybars carried in automobile).
Since the decision in the Foster case, our supreme court has spoken only one time on the subject of the crime of possession of burglary tools in Florida. The occasion was its opinion in State v. Thomas, 362 So.2d 1348 (Fla. 1978). Each party to this appeal argues that the Thomas case supports his respective position. Thomas did not concern a situation such as that presented in this case, but in its decision the court stated that possession of otherwise innocent items, coupled with the use or intended use of such tools in a burglary, is unlawful. Following that statement, the court said "[n]o crime is committed until the items are in the actual or constructive possession of a person who is using or attempting to use the objects as burglary tools." Construing these sentences together, we believe the court in the Thomas case was simply restating the rule announced in the Foster case as we have restated it here; that is, that where a person *455 is found in possession of items of an innocent nature (common household tools, or tools of ordinary or everyday use), the intent to use such items to commit a burglary can only be found from evidence that the items were in fact used to commit or attempt to commit a burglary.
The dispositive determination, then, is whether the items possessed by the defendant are in the category of innocent items. If they can be so characterized, evidence of their use in the commission or attempted commission of a burglary is essential to establish a prima facie case of possessing burglary tools.
Of the items possessed by appellant in this case, we have no difficulty in concluding that the knife, the flashlight, the screwdriver, and the socks were each in the category of innocent items. They were so considered by the courts in Foster v. State, supra, People v. Spencer, supra, and State v. Hansen, supra. Although the ice picks seem of more dubious character, we are not prepared to say that an ice pick today is not a common household tool, or a tool of ordinary or everyday use. We may think that iceboxes have generally been replaced by mechanical refrigerators, so that the average household has no need of an ice pick to handle large blocks of ice, but ice picks obviously have modern household uses because they remain in demand as a staple hardware item and kitchen utensil. We believe they must be regarded as innocent in character.
Does an ice pick become other than innocent when carried in a combination of two ice picks, a screwdriver, a knife, a pair of socks and a flashlight? We believe not. To hold otherwise would, we feel, open the door to criminalizing the mere possession of innocent items. We regard the fact that appellant was found in possession of a combination of items, as distinguished from being in possession of only one ice pick, as part of the surrounding circumstances. Such surrounding circumstances cannot be used indirectly as evidence of unlawful intent through the device of considering the nature of an item transformed by the circumstances from innocent to criminal.
We hold that the undisputed material facts in this case did not establish a prima facie case of possession of burglary tools. The trial judge, therefore, erred in denying appellant's motion to dismiss.
We vacate the judgment and sentence herein and direct that appellant be discharged.
HOBSON, Acting C.J., and BOARDMAN, J., concur.
NOTES
[1] People v. Adamkiewicz, 298 N.Y. 176, 81 N.E.2d 76 (1948) (overturning a conviction for the crime of possessing a dangerous weapon).